BENJAMIN NOYES vs. JOHN C. BYXBEE.

The power of a committee or public officer to commit for a contempt, where authorized by an act of the legislature to summon witnesses and examine them under oath, should not be left to implication, but should clearly appear on the face of the act.

The power given by statute to the insurance commissioner to investigate the financial condition of any life insurance company of the state, to summon its officers before him, to compel their attendance and the production of papers, and to examine them under oath, does not authorize him to commit for contempt in refusing to be sworn and to answer questions.

HABEAS CORPUS, in the Court of Common Pleas of New Haven County.

The court issued the writ upon the application of the plaintiff, who alleged that he was held in custody by the defendant. The defendant, who was sheriff of New Haven County and keeper of its jail, made the following return to the writ:—

In obedience to the foregoing writ I have the body of the said Benjamin Noyes here before the court, and, for the cause of his detention by me, I state that on the 30th day of October, 1877, John W. Stedman, Insurance Commissioner of the state, at said New Haven, signed and issued and delivered to me as the sheriff of said county, for service, a certain warrant in the words and figures following, to wit:—To the sheriff of New Haven County, or his deputy, *Greeting:*— Whereas I, John W. Stedman, Insurance Commissioner of

the state of Connecticut, did, on the 30th day of October, 1877, sign and issue a subpœna directed to Benjamin Noyes of said town, summoning him by virtue of a certain act entitled an act conferring additional power upon the insurance commissioner of the state, approved March 22d, 1877, to appear before me at the office of the State Attorney, in the court house at said city of New Haven, at two o'clock in the afternoon of said 30th day of October, then and there to testify and be examined under oath in reference to the condition and affairs and management of two certain corporations chartered by said state, by the respective names of the American Mutual Life Insurance Company of New Haven, and the American National Life & Trust Company of New Haven; and whereas said summons was duly served by John C. Byxbee, sheriff of said New Haven County; and whereas the sum of seventy cents was paid to said Noyes for his travel to and attendance before me by said officer who summoned him; and whereas said witness did not appear at said time and place, though duly called; and whereas I did thereupon, on said 30th day of October, 1877, sign and issue a capias commanding the sheriff of New Haven County, or his deputy, by authority of the State of Connecticut, to arrest the body of said Benjamin Noyes and him forthwith have before me at said State Attorney's office, to testify and be examined under oath touching the matters aforesaid, pursuant to said statute in such case made and provided, and be dealt with according to law; and whereas, by virtue of said capias, the body of said Noyes was duly arrested by Joseph H. Keefe, a deputy sheriff for said New Haven County, and by virtue thereof I now, on this 30th day of October, 1877, have him, the said Benjamin Noyes, before me; and whereas he has wilfully and contemptuously declined to be sworn and to answer my questions, and disclose the financial condition, affairs and management of said life insurance companies or either of them; and whereas he has declined to purge himself of contempt by answering any inquiries in reference to said companies or either of them:—These are therefore by authority of the State of Connecticut and of the act hereinbefore referred to,

to command you that you take and commit the said Benjamin Noyes to the keeper of the common jail in said town of New Haven; and the keeper of said jail is hereby ordered to receive the said Benjamin Noyes, and him safely keep within said jail until he permit himself to be sworn, and answer my questions, and disclose concerning the financial condition, affairs and management of said life insurance companies, and purge himself of contempt, and be discharged by due process of law. Hereof fail not, but make due service and return. Dated at New Haven, this 30th day of October, 1877. JOHN W. STEDMAN, *Insurance Commissioner.* And I further certify that pursuant to the above recited warrant I did on said day and year at said New Haven take the body of said Benjamin Noyes, for the purpose of committing him to the jail of said county, agreeably to the precept of said warrant; but that, before making such commitment, said writ of habeas corpus was served upon me; whereupon I did not commit said Benjamin Noyes to said jail, but produce him here before this court, and assign the premises as the cause of his said detention and imprisonment.

JOHN C. BYXBEE,
*Sheriff of New Haven County.*

To this return the plaintiff demurred, and the case was reserved upon the demurrer for the advice of this court.

*T. E. Doolittle,* with whom was *A. H. Robertson,* in support of the demurrer.

*S. E. Baldwin* and *W. K. Townsend,* contra.

PARK, C. J. The authority under which the insurance commissioner assumed to act in committing the plaintiff for contempt in refusing to be sworn and to answer questions with regard to the financial condition and management of certain life insurance companies, is to be found in the act of 1877, the part of which, important to the present case, is as follows: "The insurance commissioner may at any time investigate the financial condition, affairs and management of any life insurance company incorporated by, or doing business

in this state, and may require any such company to produce, and may examine, all its assets, records, contracts, books and papers; may compel the attendance before him, and may examine under oath, its directors, officers, agents, or any other person in reference to its condition, affairs and management, or any matter relating thereto; may administer oaths, and shall have the same power to summon and compel the attendance of witnesses, and to require and compel the production of records, books, papers, contracts, or other documents, as is now possessed by the Superior Court."

The commissioner under this act has express authority to administer oaths, and compel the attendance of witnesses, and the production of records, books, papers, and other documents, and his power in this respect is equal to that of the Superior Court. But this power became exhausted when the plaintiff obeyed his summons by appearing in due time before him. The commissioner has power to investigate the financial condition and management of any life insurance company doing business in the state, and to examine under oath its directors, officers, and agents, or any other person in reference to its condition and management. But there is no direct authority conferred upon him to commit any person to jail for refusing to be sworn and answer his questions. Indeed the word "contempt" is not found in the statute. This word is almost invariably used when power is conferred upon any court, judge, or other magistrate to punish for contempt. When a special commission was recently appointed to investigate the affairs and management of the life insurance companies of the state, special power was conferred upon the commissioners to punish for contempt. The words of the resolution were—"they shall have the same power as the Superior Court in the punishment of any witness for contempt." Generally moral influence is deemed sufficient to command respect and obedience where the legislature grant authority to a commission to make such examinations. Bank commissioners have no power to commit for contempt, although they have authority to administer oaths in the discharge of their duties, and may examine any person under oath in relation to the

affairs of the banks under their supervision, with authority to compel the attendance of witnesses and the production of books and papers by suitable process. Railroad commissioners have no such power, although they may examine witnesses under oath as they may think proper in relation to the affairs of any railroad company. The state board of charities have no such power, although in the discharge of their duties they may examine witnesses under oath, and may send for persons and papers.

We think the granting of so great power to a commission or to a single commissioner should not be left in doubt, or be inferred from the duties to be performed, when it is so easy to confer it in express terms, if the legislature is disposed to grant it.

We advise judgment in favor of the plaintiff, and that he be discharged from imprisonment.

In this opinion the other judges concurred.