W. ELLERY ALLYN, INSURANCE COMMISSIONER *v.* WILLIAM S. HULL ET AL.

BROWN, C. J., INGLIS, O'SULLIVAN and CORNELL, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

 

Argued June 4—decided July 28, 1953

*William L. Beers,* deputy attorney general, with whom were *Louis Weinstein,* assistant attorney general, and, on the brief, *George C. Conway,* attorney general, for the appellant (plaintiff).

*Herbert L. Emanuelson,* for the appellees (defendants).

O'SULLIVAN, J. The plaintiff as insurance commissioner of the state of Connecticut instituted this action against five individuals who formerly had been directors of the Madison Mutual Fire Insurance Company. His main purpose was to obtain a declaratory judgment concerning the disposition of the company's assets. The court sustained a demurrer addressed to the complaint. From the judgment subsequently rendered for the defendants upon the refusal of the plaintiff to plead over, the latter has appealed.

The complaint alleges the following facts: The Madison Mutual Fire Insurance Company, herein-

after called the company, was organized under a special charter in 1855. Over the succeeding years, policies insuring against loss by fire and other casualties were issued to various persons, many of whom abandoned their interest in the company upon the expiration or other termination of their policies. In February, 1946, the defendant Steele, as attorney for the company, wrote to the insurance commissioner, inquiring about the mechanics of liquidation. The commissioner replied that "[t]here appears to be no provision in the Connecticut Insurance Law which would vest this Department with jurisdiction over a liquidation of this nature. While there are provisions under which the Commissioner has authority in the liquidation of an insolvent domestic insurance company, the Madison appears to be solvent with a surplus of approximately $20,000.00 according to its 1945 annual statement. Our conclusion, therefore, is that the Directors should proceed in this matter under the general law governing corporate liquidations."

On May 15, 1946, the five defendants and one other were directors of the company. On that date they voted to write no new business and to renew no existing policy after May 31, 1946. They also voted to accept a proposal of the New London County Mutual Fire Insurance Company to reinsure, for the single premium of $2500, all risks outstanding on June 1, 1946. The risks were then represented by policies in the total face amount of $301,850, held by 198 persons. Of the 198, six were the company's directors, to each of whom had been issued, on May 31, 1946, a new five-year policy for $1000. These six policies were excepted from the contract of reinsurance with the New London company. As the policies held by the other 192 persons expired, after June 1,

1946, they were not renewed but each policyholder received from the company a cash dividend equal to the amount of the premium he had paid. At the expiration of all policies except those held by the directors, the company still had undistributed assets approximating $17,000.

In 1949, the company again wrote to the insurance commissioner concerning the further disposition of its assets. The commissioner replied that "this is purely a legal matter over which we have no jurisdiction." On May 31, 1951, five policies, being renewals of those written on the same date in 1946, were issued to the five defendants, who still remained directors of the company. The sixth of the original directors' policies had been previously canceled.

Thereafter, the five directors entered into negotiations with the Glover Insurance Agency of South Norwalk for the sale of the charter. On February 5, 1952, the directors met in special meeting and, purporting to act as the sole policyholders, voted to distribute to themselves the company's remaining assets, less such an amount as would meet any unpaid bills. On February 7, 1952, the company wrote five new policies in the names of persons designated by the Glover agency. At the annual meeting of the company held on the same day, those five persons and the defendants elected themselves directors, and at a subsequent directors' meeting, those representing the Glover interests were elected to the various offices. The defendants then resigned as directors. Purporting to act under the vote of February 5, 1952, the defendants distributed to themselves the company's assets of $19,240, which included $2000 paid for the charter. The several grounds of demurrer, addressed to the complaint, revolve around the one question determinative of this appeal. That question,

as the parties concede, is whether the plaintiff has the legal right or power to institute this action.

The plaintiff is a state official whose office was created by the General Assembly. General Statutes § 6025. Like other comparable public officials, he has only such power and authority as are clearly conferred or necessarily implied. *State* v. *Hartford Accident & Indemnity Co.,* 138 Conn. 334, 339, 84 A.2d 579; Mechem, Public Officers, § 511; 43 Am. Jur. 68, § 249. Section 6029 prescribes his powers and duties. It requires him, among other things, to "see that all laws respecting insurance companies are faithfully executed." Undoubtedly, this vests him with a wide range of discretion. *American Casualty Ins. & Security Co.* v. *Fyler,* 60 Conn. 448, 460, 22 A. 494. That discretion, however, cannot be exercised on everything bearing directly or indirectly upon the subject of insurance. See *Noyes* v. *Byxbee,* 45 Conn. 382, 385. The legislative mandate which we have quoted does not endow him with limitless authority to do whatever he thinks he ought to do. The statute does not speak of laws relating to insurance. It refers to laws respecting "insurance companies." The authority granted by it to the plaintiff, therefore, is circumscribed. The statute permits him to supervise the activities of insurance companies only so far as to see that they fulfil the obligations imposed upon them by law. It gives him no power over the directors of insurance companies in their individual capacities.

The complaint does not purport to state a cause of action against the company. Indeed, the company is not even a party defendant. Nor has the action been brought against the defendants as directors. In short, the plaintiff seeks to compel neither the company nor its directors to execute any legal duty. The gist of the

complaint is that the defendants, as individuals, should respond because of some act of alleged misconduct. Justification for the maintenance of the present action cannot be found in § 6029.

The plaintiff maintains that, on the face of the admitted facts, a grievous wrong, intentional or otherwise, has been done to 192 policyholders. Whether this is so, or what rights, if any, they may have under a different alignment of parties, we do not determine on this appeal. We go no further than to hold that this plaintiff is without power to bring the instant action. However commendable may be his purpose, the plaintiff lacks the necessary authority to sue as he has done.

There is no error.

In this opinion the other judges concurred.