Langenberg v. Decker.

No. 16,373.

## LANGENBERG v. DECKER.

TAX COMMISSIONERS.—*State Board.*—*Power to Punish for Contempt.*—So much of the tax law of 1889, as attempts to confer upon the State Board of Tax Commissioners power to fine and imprison for contempt is unconstitutional.

CONSTITUTIONAL LAW.—*Independence of the Three Departments of State.*—The power of the three great departments of the State are not merely equal, but they are exclusive in respect to the duties assigned to each, and they are absolutely independent of each other.

CONTEMPT.—*Power to Punish for, Who May Exercise.*—Only the courts and the General Assembly can punish for contempt; and the power to do so can not be conferred upon any other official or board of officials.

GENERAL ASSEMBLY.—*Delegation of Power.*—The General Assembly can not delegate its law-making power to any person or body.

From the Marion Superior Court.

*A. G. Smith,* Attorney General, for appellant.

*A. C. Harris, T. A. Stuart, W. V. Stuart, C. B. Stuart, W. A. Ketcham, S. O. Pickens, S. N. Chambers, C. W. Moores, A. Zollars, N. O. Ross, J. T. Dye, J. M. Butler, A. H. Snow* and *J. M. Butler, Jr.,* for appellee.

COFFEY, J.—The General Assembly of the State passed an act, which was approved and went into force on the 6th day of March, 1891, entitled "An act concerning taxation,

repealing all laws in conflict herewith, and declaring an emergency."

The act creates a State Board of Tax Commissioners, composed of five persons, viz., the Secretary of State, the Auditor of State, and the Governor of the State, who are styled *ex officio* members, and two persons of opposite political faith appointed by the Governor of the State. At the time the matters occurred, out of which this suit arose, the board was composed of the Secretary of State, the Auditor of State, the Governor of the State, Josiah N. Gwin and Ivan N. Walker.

By the provisions of the act the Governor of the State is the chairman of the State Board of Tax Commissioners.

Section 129 of the act provides that this board shall annually convene in the office of the Auditor of State on the first Monday of August each year for the purpose of assessing railroad property and equalizing the assessment of real estate; that it shall not be bound by any reports or estimates of value of railroad property, real estate or other property, as returned to the county auditors or to the Auditor of State, but shall appraise and assess all property at its true cash value, as defined by the act, according to its best knowledge and judgment, and so equalize the assessment of property throughout the State. It also contains this provision: "They shall have the power to send for persons, books and papers, to examine records, hear and question witnesses, to punish for contempt any one who refuses to appear and answer questions, by fine not exceeding one thousand dollars, and by imprisonment in the county jail of any county not exceeding thirty days, or both. Appeals shall lie to the criminal court of Marion county from all orders of the board inflicting such punishment, which appeals shall be governed by the laws providing for appeals in criminal cases from justices of the peace so far as applicable. The sheriffs of the several counties of the State shall serve all process and execute all orders of the board."

Claiming to act under the power and authority conferred

upon it by the provisions of this statute, the State Board of Tax Commissioners, on its own motion, caused a subpœna duces tecum to be issued to all the banks in the State, requiring the president, cashier and book-keeper, or either of them, of the bank named in the subpœna, to appear before the board, at the office of the State Board of Tax Commissioners, in the State-House in the city of Indianapolis, on a day named in the subpœna, and to bring and have with them, then and there, such books, papers and accounts of such banking institution as should fully disclose and show the names of all persons having money, bonds, stocks, notes or other property of value on deposit and in the custody of such bank on the 1st day of April, 1891, and the respective amounts of such deposits or other property in the custody of the bank, and to answer all questions which might be asked in relation thereto, or with reference to the property owned by the bank itself. The subpœna was signed by Joseph T. Fanning, as secretary of the board.

At the bottom of the subpœna, and following the signature of the secretary, was the following:

"For the purposes of the State Board of Tax Commissioners, as set forth in this subpœna, it will answer if the president, cashier or book-keeper of the above mentioned bank make out a sworn statement of the balances to the credit of its individual depositors on April 1st, 1891, giving name in full of each depositor, amount of his credit balance, and forward said sworn statement to the State Board of Tax Commissioners without delay."

One of the subpœnas was served upon the appellee, at the city of Evansville, where he resides, and where he is vice-president of a State bank known as the German Bank of Evansville. In answer to the subpœna he appeared before the State Board of Tax Commissioners on the 25th day of August, 1891, when there was present of the members of the board the following persons, and no others, viz.: Claude

Matthews, Secretary of State, acting as president of the board; J. O. Henderson, Auditor of State, and Ivan N. Walker.

Upon his appearance he was duly sworn, when the following proceedings were had, viz. :

"Question. State your name and place of residence? Answer. Phillip C. Decker ; I reside in the city of Evansville.

"Q. In what business are you engaged? A. That of banking.

"Q. With what institution are you engaged, and in what capacity? A. I am vice-president of the German Bank of Evansville, Indiana ; the president lately died and I am acting as president. Our bank was organized under the laws of Indiana.

"Q. State the aggregate amount of the individual deposits held by the German Bank of which you are vice-president on the 1st day of April, 1891. A. About $300,000.

"Q. Give the amount of money held on deposit by said bank on the 1st day of April, 1891, belonging to some one depositor.

"The witness: Before answering the question I respectfully ask the board whether there is any appeal, complaint, suit or proceeding of any kind pending before this board or elsewhere to assess any depositor, or to revise his tax list in any manner."

By the board: "No; we are exercising the power of discovery."

The witness: " I decline to answer, under the advice of counsel, either as to the name of any depositor or the amount of his deposit."

"Q. Give me the amount of personal property, other than money, held by your bank, as custodian or agent, on the 1st day of April, 1891, such as notes, stocks, bonds or other property of value belonging to any one depositor?"
A. " I respectfully ask the board to state, before an answer to the question just put, whether there is any appeal, complaint, cause or proceeding of any kind pending before this

board or elsewhere to assess the property of said bank or any partner therein."

Answer by the board: "No."

The witness: "I decline to do so, under advice of counsel."

"Q. For the purpose of ascertaining what, if any, money on deposit in your institution, belonging to persons, firms, companies or corporations, has been omitted purposely or otherwise from the tax duplicate of Vanderburgh county. You will please give this board a list of the names of your depositors on the 1st day of April, 1891. A. I most respectfully decline to give such list, having just been informed by the board that no appeal, complaint, suit or proceeding is here pending before this board or elsewhere, to assess or revise the tax list of any depositor, or partner, or officer of the bank.

"Q. For the purpose above indicated, give a list of depositors on the 1st day of April, 1891, with the several amounts of money to their credit on that day. A. I decline to give either the names of my depositors or the several amounts standing to their credit, respectively, on the 1st day of April, 1891, either for taxes or for any other purpose, because I am now informed by the board that there is no appeal, complaint, suit or proceeding pending here or elsewhere to assess or revise the tax list of any depositor.

"Q. Likewise give us the names of all persons who have property other than money, stocks, bonds, jewelry or other property of value by said German bank held as custodians on the first day of April, 1891, and the several amounts, with a description and value of such property. A. I decline to answer your questions for the reasons given above.

"Q. By an examination of the books and papers of said bank would you, as its vice-president, be able to furnish to this board the information asked for in the foregoing question? A. I would not.

"Q. You are now commanded to produce such books and

papers of the German bank for the inspection of this board as will fully afford the information herein sought to be obtained, and which will discover the names of the depositors of said German bank on the 1st day of April, 1891, and the several amounts to their credit; also, such books as will show the names and description of the property of value held by said bank as custodian and agent on said day.  A.  As vice-president of said bank I now decline to produce any of its books or papers for the inspection of this Board for any purpose."

Thereupon the State Board of Tax Commissioners, because of the refusal of the appellee to appear and answer the questions above set forth, and to give the information thereby sought to be elicited, assessed against him a fine of five hundred dollars, and that he stand committed until the fine be paid or replevied, and entered the following judgment:  "Therefore, it is considered and ordered by the State Board of Tax Commissioners that Philip C. Decker, on account of his refusal to appear and answer questions, and his disobedience to the order of this board, be and hereby is fined in the sum of five hundred dollars ($500), and it is further considered by the board that said Philip C. Decker do stand committed to the jail of Marion county, Indiana, until said fine be paid or replevied."

Upon entering the foregoing judgment the secretary of the board delivered to the appellant, as the sheriff of Marion county, a commitment reciting the fact that the appellee had been fined the sum of five hundred dollars for contempt, and ordering that he be committed to the jail of Marion county until discharged by due process of law. Upon this commitment the appellee was arrested.  He thereupon filed his petition in the Marion Superior Court praying for a writ of *habeas corpus.*

To the writ issued upon this petition the appellant made his return stating, among other things, substantially the proceedings above set forth.  To this return the appellee filed

exceptions, which were sustained by the court, and an order was entered discharging the appellee from custody.

The assignment of error calls in question the propriety of the ruling of the Marion Superior Court in sustaining the exceptions to the return made by the appellant to the writ of *habeas corpus.*

It is contended by the appellee:

*First.* That the power to punish for contempt is a judicial function which can only be exercised by a court; and if it be claimed that the act in question makes the State Board of Tax Commissioners a court, then so much of the act as seeks to do so is void, because it is not embraced in the title of the act, and because three of the persons constituting the board are forbidden by the Constitution of the State from exercising judicial functions.

*Second.* That if the board has power to punish for contempt it can only do so for the refusal of a witness to appear and answer questions pertinent and material to some issue in a suit, action or proceeding then pending.

*Third.* That the proceedings of the board in this matter are in violation of the provisions of the Constitution of the United States, which provides that " The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated ; and no warrant shall issue but upon reasonable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

*Fourth.* That the State Board of Tax Commissioners has no original jurisdiction except in the matter of the assessment of railway corporations and equalizing the assessment of real estate.

These several propositions have been ably and exhaustively argued on both sides, not only in the briefs on file, but also orally in open court, but it seems to us that if the first proposition presented by the appellee, namely, that so much

of the statute in question as attempts to confer on the State
Board of Tax Commissioners the power to fine and imprison
for contempt of its authority is void, by reason of being in
conflict with State Constitution, can be sustained, the other
questions presented do not necessarily or properly arise. If
this position can not be maintained, then some or all of the
other propositions do arise, and must be decided by this court,
but the first inquiry in a case like this leads, naturally, to an
investigation of the authority under which the complaining
party has been deprived of his liberty.

The solution of the question presented renders it neces-
sary that we shall inquire:

*First.* As to what department of the State government the
State Board of Tax Commissioners belongs; and,

*Second.* Into the nature of the power to fine and commit
for contempt.

Article 3, section 1, of our State Constitution, is as fol-
lows:

" The powers of the government are divided into three
separate departments; the legislative, the executive, includ-
ing the administrative, and the judicial; and no person
charged with official duties under one of these departments
shall exercise any of the functions of another, except as in
this Constitution expressly provided."

The division of powers made by our Constitution exists in
the Federal Constitution and in most, if not all, of the State
Constitutions.  The powers of these departments are not
merely equal, they are exclusive, in respect to the duties as-
signed to each, and they are absolutely independent of each
other.  The encroachment of one of these departments upon
the other is watched with jealous care, and is generally
promptly resisted, for the observance of this division is es-
sential to the maintenance of a Republican form of govern-
ment.  *Wright* v. *Defrees,* 8 Ind. 298; *Lafayette, etc., R. R.
Co.* v. *Geiger,* 34 Ind. 185; *State, ex rel.,* v. *Denny,* 118 Ind.

382 ; *State, ex rel.,* v. *Noble,* 118 Ind. 350 ; *Hovey* v. *State, ex rel.,* 127 Ind. 588.

It is the duty of the legislative department of the State to make the laws ; it is the duty of the judicial department to construe and apply them ; and it is the duty of the executive department to see that such laws are faithfully executed.

No provision of our Constitution was more carefully considered and fully discussed in the Constitutional Convention than the one now under consideration. As to the legislative department it is believed that Mr. Biddle expressed what was the understanding of the convention when he said : " The General Assembly has no other duty nor *power* than to *make* laws. After a law has been enacted this department has no further power over the subject. It can neither adjudge the law nor execute it, but must leave it upon the statute books, and for any function still remaining in the legislative power, there it would forever remain. All the power of this department here ends." 2 Constitutional Debates, 1324.

It can not, with propriety, be contended that the State Board of Tax Commissioners belongs to the legislative department of the State, for it has no power to enact laws. The General Assembly can not delegate its law-making power to any other person or body. It can not be successfully maintained that the Legislature could confer on the Governor of the State and the principal administrative officers of the State duties pertaining to the judicial department. Indeed, the learned Attorney-General admits, in argument, that the State Board of Tax Commissioners is not a court, and he does not contend that it can perform any function which is of a purely judicial character. As the State Board of Tax Commissioners is neither a legislative body nor a court, it must belong to the executive or administrative department of the State. That it does belong to that department, we think, is too plain for argument. It is charged with the duty of executing certain provisions of the revenue-laws of the State, and when it has performed that

duty its functions are at an end.   But because it is a body belonging to the executive or administrative department of the government it by no means follows that it may not perform functions which are, in their nature, judicial.   Hearing and determining appeals from the county board of review, hearing witnesses and equalizing the appraisement of real estate, and assessing the railroad property named in the act, is the performance of a duty judicial in its nature.

Mr. High, in his work on Injunctions, section 493, in speaking of the power of courts of equity to enjoin assessments, says:   "So the fact that the tribunal fixed by law for determining and equalizing the value of property for the purposes of assessment has assessed it too high will not warrant an injunction, since the action of such officers is judicial in its nature and will not ordinarily be reviewed in equity."

Mr. Mechem, in his work on Public Offices and Officers, in considering the subject of the liability of judicial officers on account of their official acts, in section 636 says: "There is still a large class of officers whose duties lie wholly outside of the domain of courts of justice, or concern the business of the court only incidentally or occasionally, and who are yet called upon by law to exercise, for the benefit of the public or of individuals, powers very nearly akin to those of judges in the courts."

In the case of *State* v. *Wood*, 110 Ind. 82, this court, in speaking of the power of the board of county equalization, said:   "The board was not, nor was it necessary that it should be, a court.   It was not, and could not be, sitting as a court.   It was in the exercise of statutory powers and duties, which duties, perhaps, may be said to be *quasi* judicial."

So in the case of *Kuntz* v. *Sumption*, 117 Ind. 1, in speaking of the same tribunal, this court said:   "We agree with the appellee's counsel that the board of equalization is not a judicial tribunal, in the strict sense of the term ; but while

this is true, it is also true that it possesses functions of a judicial nature."

It is often a matter of much difficulty to determine whether the functions exercised by a tribunal of this character are such as pertain exclusively to the courts, or whether they are such as it may lawfully exercise. Mr. Mechem on Public Office and Officers, section 637, says: ' "*Quasi* judicial functions * * * are those which lie midway between the judicial and ministerial ones. The lines separating them from such as are thus on their two sides are necessarily indistinct; but, in general terms, when the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed *quasi* judicial.' "

That it was in the power of the General Assembly to confer on the State Board of Tax Commissioners the power to hear and determine appeals from the county boards of review, to equalize the assessments of real estate and to assess the railroad property named in the act.is not doubted, and the question as to whether the Legislature could confer upon it the power to fine and imprison the citizens of the State for contempt of its authority depends upon whether such action is purely judicial or only *quasi* judicial.

A proceeding against a person as for a contempt is ordinarily in the nature of a criminal proceeding, and statutes authorizing punishment for contempt of the authority of a tribunal are criminal statutes, and are to be strictly construed. *Maxwell* v. *Rives*, 11 Nev. 213; *Holman* v. *State*, 105 Ind. 513.

In the case of *Ex parte Doll*, 7 Phila. 595, in discharging the prisoner who had been committed by a commissioner appointed by the United States Circuit Court, as for a contempt, for refusing to appear and testify and produce certain books, the court said : " I very much doubt the power of Congress

to invest a commissioner with the authority in a proceeding originally instituted before him to summarily commit a citizen for alleged contempt. This was an exercise of the judicial power of the United States, which, under the Constitution, could not be intrusted to an officer, appointed and holding his office in the manner in which these commissioners were appointed and held their offices."

Again, in the celebrated case of *Kilborn* v. *Thompson*, 103 U. S. 168, involving the question of the power of Congress to arrest and punish a witness for contempt in refusing to answer questions before a committee of the House, Justice MILLER, in speaking for the court, said : " The Constitution declares that no person shall be deprived of his life, liberty, or property, without due process of law, and it has been repeatedly held by the United States Supreme Court that this means a trial in which the rights of the party shall be decided by a court of justice appointed by law and governed by the rules of law previously established."

So, again, in the case of *In re Mason*, 43 Fed. Rep. 510, in which Mason had been committed by a United States Circuit Court Commissioner for contempt in failing to appear and testify as a witness, the court said : " To arrest and punish for a contempt is the highest exercise of judicial power, and belongs to judges of courts of record, or superior courts. Where jurisdiction exists there can be no review. A pardon by the executive is in most cases the mode of release. This power is not, and never has been, an incident to the mere exercise of judicial function, and such power can not be upheld upon inferences and implications, but must be expressly conferred by law."

As bearing upon the question now under discussion, see, also, *In re McLean*, 37 Fed. Rep. 648 ; *Anderson* v. *Dunn*, 6 Wheat. 204 ; *Shoultz* v. *McPheeters*, 79 Ind. 373 ; *Vandercook* v. *Williams*, 106 Ind. 345 ; *Ex parte Milligan*, 4 Wall. 2 ; *Gregory* v. *State, ex rel.*, 94 Ind. 384 ; *Whitcomb's Case*, 120 Mass. 118.

Langenberg *v.* Decker.

These cases lead to the inevitable conclusion that the power to punish for contempt belongs exclusively to the courts, except in cases where the Constitution of a State expressly confers such power upon some other body or tribunal. Our State Constitution confers such power upon the General Assembly, but upon no other body. The doctrine that such power rests with the courts alone is based upon the fact that a party can not be deprived of his liberty without a trial. To adjudge a person guilty of contempt for a refusal to answer questions, the tribunal must determine whether such questions are material, and whether it is a question which the witness is bound to answer, otherwise it can not be determined that the witness is in contempt of its authority in refusing to answer.

So far as we are informed, the trial of a citizen involving the question of his liberty, by any civil tribunal other than a court, has never been sustained, unless the power to do so was conferred by some constitutional provision. For the reasons above given, our conclusion is that so much of the act under consideration as attempts to confer on the State Board of Tax Commissioners power to fine and imprison for contempt is in violation of section 1, article 3, of our State Constitution, and is void. It follows that such board had no authority to fine the appellee and commit him to the jail of Marion county, and that the Marion Superior Court did not err in ordering his release.

It is claimed, however, by the learned Attorney General that the conclusion here reached is in conflict with the conclusion in the cases of *Ex parte Mallinkrodt*, 20 Mo. 493; *Swafford* v. *Berrong*, 84 Ga. 65, and *Noyes* v. *Byxbee*, 45 Conn. 382.

We have given each of those cases a careful consideration.

In *Ex parte Mallinkrodt, supra*, it was held that the powers of a notary public in taking depositions was purely statutory, and that the statutes of the State of Missouri did not confer on such officer the power to commit a witness for refusing to produce books.

In the case of *Swafford* v. *Berrong, supra,* it was held that the act of the General Assembly incorporating the town of Clayton conferred upon the Governing Board or Council judicial powers, with authority to try offenders alleged to have violated the town ordinances; and inasmuch as it was a court, when sitting for that purpose, it had the power to punish for contempt. No question of the authority of the General Assembly to confer such power, under the Constitution of Georgia, was involved in the case or decided by the court.

In the case of *Noyes* v. *Byxbee, supra,* it was held that the statutes of Connecticut did not confer on the insurance commissioner, appointed to investigate the financial condition of life insurance companies, power to commit a witness for refusing to be sworn to answer questions.

In our opinion these authorities do not conflict with the conclusion we have reached in this case.

Striking out the portion of the statute which attempts to confer on the State Board of Tax Commissioners the power to punish by fine and imprisonment for contempt, does not necessarily affect the validity of any other provision, but it disposes of the question as to whether the appellee is lawfully imprisoned, and, striking out such provision, the conclusion necessarily follows that he is entitled to his release. This is the sole purpose of a suit of this kind. The purpose of the suit being attained, the other questions sought to be presented in this cause, and so ably discussed on both sides, do not arise, and we can not, with propriety, discuss or decide them. If this were a prosecution for a violation of other provisions of the statute, or if it were a suit to enjoin the collection of increased taxes made on an increase in the value of property not named in the act fixed by the State Board of Tax Commissioners in the exercise of original jurisdiction, then we could, perhaps, make a binding adjudication as to the other questions discussed, but in a suit like this, where the sole question relates to the right of the ap-

pellee. to be released from an unlawful imprisonment, inflicted by a tribunal without authority to commit him, we do not think they are involved in such a sense as to render it necessary or proper that they should be decided.

Judgment affirmed.

Filed May 10, 1892.

## CONCURRING OPINION.

ELLIOTT, C. J.—A citizen can only be imprisoned by due process of law. Where there is an imprisonment without due process of law, the great writ of liberty will deliver the citizen from an unlawful restraint. If, therefore, the appellee was imprisoned without due process of law, the writ of *habeas corpus* was properly awarded, and this appeal must fail. There is, it is obvious, one question only that we can with propriety decide, and that is, whether the appellee was imprisoned by due process of law.

Prison doors open only at the command of the law, and that law must be warranted by the Constitution. It is the law that restrains citizens of their liberty, and the command for the restraint must issue from an officer or tribunal having jurisdiction to adjudge imprisonment. If the State board had jurisdiction to adjudge that the appellee should be imprisoned, there was due process of law; if it had no jurisdiction to imprison, there was not due process of law, and the appellee was unlawfully deprived of his liberty. A judgment of a tribunal—even the highest in the land—is absolutely void if rendered in a case over which it had no authority. Whether the State board had authority in this instance to consign a citizen to prison depends upon the validity of the statutory provision assuming to invest the board with the high power of casting citizens into jail. The question is one of legislative power. If the power exists, then the Legislature may authorize a board of town trustees, a board of assessors, a board of road supervisors, or any other administrative officer to adjudge imprisonment. against a citi-

zen who disobeys an order made by it. If it be granted that the power exists, then it inevitably follows that it is one which can not be limited or controlled by the courts, but is to be exercised without limit or restraint by the legislative department of the government.

In my judgment the Legislature has no power to authorize an administrative or executive officer, whatever his rank or duties, to sentence a citizen to imprisonment. It can not confer that authority upon the Governor of the State, nor upon any other executive or administrative officer, nor upon all the executive or administrative officers of the State combined.

The Constitution defines the power of the Legislature to punish for contempt. It expressly provides when the Legislature may punish for contempts committed against its own immediate authority, and thus clearly denies the power to punish save as expressly provided, for the express provision excludes all implied ones. This is the provision of the Constitution : " Either house, during its session, may punish by imprisonment, any person not a member, who shall have been guilty of disrespect to the house by disorderly or contemptuous behavior in its presence, but such imprisonment shall not at any time exceed twenty-four hours." Article 4, section 15. This provision, as every one can see, closely binds and strongly fetters the power of the General Assembly itself, for it restricts the exercise of the authority to the time that body is in session, and limits the duration of the imprisonment to twenty-four hours. As the Legislature can only exercise the authority given it while in session, it is absolutely without power to lodge the authority in any administrative officer or body of its own creation.

The authority to imprison resides where the Constitution places it, and the Legislature can not give it a residence elsewhere. The authority is essentially a judicial one abiding in the courts of the land. As it is a judicial power it is not created by the Legislature nor vested by that body. The Legislature can not create judicial power, nor vest it in

any tribunal. Judicial power, like all sovereign powers, comes from the people, and vests where the people's Constitution directs that it shall vest. The Legislature may name tribunals that shall exercise judicial powers unless the Constitution otherwise provides, but the power itself comes from the Constitution, and not the statute. *State, ex rel.,* v. *Noble,* 118 Ind. 350 (354); *People, ex rel.,* v. *Maynard,* 14 Ill. 419; *Perkins* v. *Corbin,* 45 Ala. 103; *Greenough* v. *Greenough,* 11 Pa. St. 489; *Missouri River, etc., Co.* v. *National Bank,* 74 Ill. 217; *Harris* v. *Vanderveer,* 21 N. J. Eq. 424. The Legislature may distribute the judicial power in accordance with the Constitution, but it can not delegate that power for the plain reason that it has none to delegate.

If the State Board can be regarded as a judicial tribunal in the true sense of the term, the distribution of authority to it to punish for contempt by imprisonment would be valid and effective, but it is not a judicial tribunal. It does, indeed, possess powers of a judicial nature, but so does every officer in the land, high or low, who has the slightest discretion as to the mode of exercising his duty, and yet nothing can be clearer upon principle and authority than that such an officer is not a judicial officer within the meaning of the Constitution. *Eastman* v. *State,* 109 Ind. 278 (281), and cases cited; *Wilkins* v. *State,* 113 Ind. 514, and cases cited. We understand the Attorney-General to concede, in his able and elaborate argument, that the State Board is not a court. He says, tersely and explicitly, that " the State Board is neither a court nor can it be made a court." He endeavors, however, to prove that the case is not within the rule that only courts can exercise purely judicial powers by this line of argument. " But," as he says, " the proceeding to assess and value property for the purpose of taxation is neither a case nor a controversy. It does not operate through legal forms nor require the machinery of the courts to put it in operation. Such proceedings are not authorized to settle private controversies, and they do not involve any questions

which courts are or ever were authorized to take jurisdiction of." It may be granted that this argument is in part valid, but it is so only in part. The conclusion spreads far beyond the valid premise. In free countries courts always have assumed jurisdiction of questions involving personal liberty, and so they must, or else free government, securing personal liberty, ceases to exist. When that great right comes in issue, the courts hear and decide, and the authority of executive or administrative officers is at end. Whatever else such officers may be empowered to do, they can not be empowered to sit in judgment upon the right of a citizen to his personal liberty. Only the courts can give the command which takes from the citizen his liberty and places him within prison walls, and they can only give it in accordance with the law of the land. However extensive the authority of the board may be, it is always ministerial or administrative, and hence it does not go far enough to adjudge imprisonment, for it is beyond the power of the Legislature to invest it or any administrative board with that high judicial function.

It is, doubtless, within the power of the Legislature to authorize the State Board to lodge a complaint against a person who disobeys a rightful order made by it in a court of competent jurisdiction, and thus secure, by constitutional methods, the punishment of a wrong-doer, but the board can not be invested with the authority to hear and decide, for that dwells only in courts of justice. The board may be made a complainant by law in a proceeding to punish a citizen who refuses obedience to its rightful authority, or it may be empowered to require some law officer of the State to invoke the assistance of the courts, but a court or a tribunal of judges it can never be as long as our Constitution remains unchanged, or as long as the great principle of free government, forbidding the centralization of the powers of government in one department, is respected and obeyed.

For the reasons thus hastily stated and dimly outlined I fully and unreservedly concur in the conclusion reached by the court.

