MARY JANE PERRY *v.* JON PERRY
(14404)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued May 5—decision released June 29, 1992

*Sandra P. Lax,* for the appellant (defendant).

*Joseph X. Dumond, Jr.,* assistant attorney general, with whom were *Donald M. Longley,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Wilbur Ward Dinegar,* assistant attorney general, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the Family Support Magistrate's Act, General Statutes §§ 46b-231 through 46b-235, unconstitutionally infringes the powers of the judiciary insofar as the act gives family support magistrates the power to incarcerate persons found to be in contempt of orders for child and spousal support. A family support magistrate found the defendant, Jon Perry, in arrearage in his alimony and support obligations to his former wife, the plaintiff, Mary Jane Perry, and ordered the defendant incarcerated until he paid a purge amount of $7600. After a week's incarceration, some further payments and further promises to pay, the defendant was released. After his release, the defendant appealed to

the Superior Court, which affirmed the decision of the magistrate. The defendant took a further appeal to the Appellate Court, which we transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

For the purposes of this appeal, it is undisputed that the defendant has an obligation to pay $500 weekly in unallocated alimony and child support to the plaintiff as a result of a 1987 decree dissolving their marriage. In September, 1990, the state of Connecticut, on behalf of the plaintiff, applied for a contempt order because of an alleged arrearage of $8700. After various intervening proceedings, in which the defendant made some payments in an attempt to reduce his arrearage and unsuccessfully moved to modify his financial obligation, the family support magistrate heard the motion for contempt on May 3, 1991. On May 7, 1991, the magistrate granted the motion, found an arrearage of $17,800 and ordered the defendant to pay $10,000 towards the arrearage on or before June 13, 1991.[1]

On June 13, 1991, finding that the defendant had paid only $2400, the family support magistrate found him in contempt of the May 7 order. The magistrate ordered his incarceration and required that the defendant pay $7600 in order to purge himself of the contempt. After the defendant had been incarcerated for one week, the magistrate held a new hearing that led to the release of the defendant upon his payment of another $2600 and his promise to pay, by July 5, 1991, an additional $3000 toward the arrearage and $1000 toward current support.

The defendant then appealed to the Superior Court, challenging the procedural and substantive bases for the decision reached by the family support magistrate

---

[1] The defendant did not appeal two earlier decisions denying his motions for modification of his support and alimony obligation.

and the constitutionality of the magistrate's authority to enforce an order of contempt by incarceration. The trial court rejected all of these contentions and affirmed the decision of the family support magistrate.

The present appeal raises the following issues concerning the validity of the defendant's incarceration for contempt. As a preliminary matter, the state urges us not to review the defendant's claims on their merits on two grounds, mootness and failure to take a timely appeal. The defendant urges us to overturn the contempt order on the nonconstitutional ground that the family support magistrate did not make a sufficient finding of the defendant's ability to pay the amount ordered. Finally, the defendant contends that the family support magistrate's exercise of his statutory power to hold the defendant in contempt violates two distinct constitutional principles, separation of powers and due process. We conclude that the defendant's appeal is properly before this court as a procedural matter but that it is to be rejected as a substantive matter.

I

The state suggests two procedural impediments to our plenary consideration of the constitutional issues raised by the defendant. The state maintains that issues concerning the validity of the defendant's incarceration: (1) have become moot because the defendant was released from incarceration before his appeal to the Superior Court and is not currently subject to a contempt order; and (2) should have been raised by a timely appeal from the family support magistrate's order of May 7, 1991, finding the defendant in contempt. We are unpersuaded.

A

The state claims that this court lacks jurisdiction to consider the merits of the defendant's appeal because

no contempt proceedings are currently pending against the defendant, who is no longer incarcerated. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985). We have also held, however, that "where the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, it may be 'capable of repetition, yet evading review.'" Id., 572. "In deciding whether to invoke this mitigating principle, we have considered not only the practical difficulties of timely judicial review but also '(1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the state's penal or civil system; and (3) the possibility of a similar effect on the plaintiff himself in the future.' *Shays* v. *Local Grievance Committee,* supra, 572–73 . . . ." *Moshier* v. *Goodnow,* 217 Conn. 303, 307, 586 A.2d 557 (1991).

In this case, all of these mitigating factors are present. The public importance of a question raising the constitutionality of a statute cannot be doubted. The state's ongoing program to monitor and enforce support and alimony orders will be affected by our decision on the validity of a family support magistrate's statutory authority over contempt orders. Finally, this defendant can plausibly maintain that there is a distinct likelihood that in the future he may again find himself involved in a controversy concerning his support obligations. This appeal, therefore, is not moot.

B

The state maintains, in the alternative, that the defendant's constitutional claims are not properly

before us because the defendant could have avoided the risk of incarceration, and hence the alleged invasion of his constitutional rights, by filing a timely appeal from the family support magistrate's May 7 finding of contempt. We have repeatedly held that anyone who challenges the constitutionality of a statute must prove that the statute has infringed a constitutionally protected right so as to cause him immediate harm, or an immediate threat of harm, in the circumstances of his particular case. *DiBerardino* v. *DiBerardino,* 213 Conn. 373, 383, 568 A.2d 431 (1990), and cases therein cited.

The defendant did not, however, have the opportunity to seek an earlier judicial review of the contempt order. General Statutes § 46b-231 (n) (1) permits an appeal to the Superior Court only when "[a] person . . . is aggrieved by a final decision of a family support magistrate . . . ." The order holding the defendant in contempt was not a final judgment. "This is so because no sanction or punishment had yet been imposed and, therefore, there had been no final judgment disposing of the matter. *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983); see *Barbato* v. *J. & M. Corporation,* 194 Conn. 245, 247–48, 478 A.2d 1020 (1984). No final judgment existed in this contempt proceeding until the court decided . . . not to change its earlier ruling but proceeded to final adjudication and imposed the sanction . . . ." *In re Dodson,* 214 Conn. 344, 361, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). The defendant could not, therefore, have taken an appeal to the Superior Court in advance of his incarceration.

## II

Although the defendant's appeal is properly here, we will not reach the constitutional issues that he raises if there are nonconstitutional grounds upon which to

overturn the judgment of the trial court affirming the family support magistrate's order of incarceration for contempt. We must first consider, therefore, the merits of the defendant's nonconstitutional claim that the magistrate should not have incarcerated him without making a specific finding, on the record, that he had a present ability to pay the $10,000 as ordered.

In the contempt proceedings before the family support magistrate, the magistrate acknowledged that inability to pay an order is a defense to a charge of contempt. See *Mallory* v. *Mallory,* 207 Conn. 48, 57, 539 A.2d 995 (1988); *Mays* v. *Mays,* 193 Conn. 261, 264, 476 A.2d 1562 (1984); *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). These cases also hold, however, that the defendant has the burden of proof on this issue, and the magistrate expressly found that the defendant had not sustained his burden. When he issued the contempt order on May 7, 1991, the magistrate made two express findings about the defendant's ability to pay. First, the magistrate noted that the defendant had admitted having been enriched by recent Lotto winnings in the amount of $10,000, which the defendant had chosen to disburse without regard for his economic responsibilities to his children and former spouse. Second, the magistrate found that the defendant was engaged in a viable carting and haulage business that had assets and was generating revenues. In light of these express findings, on the record, we agree with the conclusion of the trial court that the family support magistrate could reasonably have concluded that the defendant had the ability to pay the $10,000 that he was ordered to pay.

### III

We turn then to the constitutional issues raised by the defendant's incarceration for failure to comply with the family support magistrate's order that he pay

$10,000 toward the arrearage in his alimony and support obligations to his wife and children. The defendant maintains that the magistrate lacked constitutional authority to order his incarceration because of the constitutional principle that the exercise of judicial authority must be confined to members of the judiciary. As a corollary to this argument, the defendant maintains that his constitutional rights to due process were violated because he could not appeal the validity of his incarceration before he had lost his freedom.

A

In order to put the defendant's constitutional claims into perspective, we must review the history of the state legislation that governs the enforcement of family support orders. That history reflects a legislative concern for the timely and effective collection of support payments arising out of child and spousal support rights under Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq.

The Connecticut Family Support Magistrate's Act, General Statutes §§ 46b-231 through 46b-235, was first enacted in 1986 in response to federal legislation providing federal funds for states that complied with federal requirements for the expeditious enforcement of child support orders in cases arising under Title IV-D. See Public Acts 1986, No. 86-359; "Child Support Enforcement Amendments of 1984," Pub. L. No. 98-378, 98 Stat. 1305 (1984), now codified in various sections of 42 U.S.C. §§ 651 through 675. The federal act conferred on the secretary of health and human services the authority to promulgate regulations that would implement the statutory mandate for expeditious enforcement of Title IV-D support orders. 42 U.S.C. § 666 (a) (2). The secretary, in turn, has defined the statutorily required "expedited processes" as "administrative or expedited judicial processes or both which

increases [sic] effectiveness and meet processing times specified in paragraph (b) (2) of this section *and under which the presiding officer is not a judge of the court.*" (Emphasis added.) 45 C.F.R. § 303.101 (a).[2]

In compliance with the processes mandated by the federal act, the legislature, by the passage of § 46b-231 (d) created "the family support magistrate division of the superior court for the purpose of the impartial administration of child and spousal support." The division is staffed by nine full time magistrates, appointed by the governor for three year terms, all of whom "must have [been] engaged in the practice of law for five years prior to [their] appointment[s] and shall be experienced in the field of family law." General Statutes § 46b-231 (f). Neither the federal statute nor the federal regulation requires that the designated support officer be given the power to imprison for contempt. Our statute originally provided that, if a magistrate found that incarceration of an obligor for failure to pay support would be appropriate, that finding should be submitted to the Superior Court, which would give the obligor the opportunity to be heard before deciding whether or not to order incarceration. See General Statutes (Rev. to 1989) § 46b-231 (m) (6). In 1989, however, the require-

---

[2] The secretary did not explain why his regulation excluded a judge from being the officer presiding over the mandated "administrative or judicial processes." See Department of Health and Human Services, Office of Child Support Enforcement, Child Support Enforcement Program; Implementation of Child Support Enforcement Amendments of 1984, 50 Fed. Reg. 19607, 19612 (1985). It is reasonable to assume, however, that his primary concern was to ensure that the state officials charged with responsibility for expeditious enforcement of Title IV-D support orders devote their full energies to this assignment without the distraction of competing judicial responsibilities.

45 C.F.R. § 303.101 (b) (2) provides: "Under expedited processes, actions to establish or enforce support obligations in IV-D cases must be completed from the time of successful service of process to the time of disposition within the following time frames: (i) 90 percent in 3 months; (ii) 98 percent in 6 months; and (iii) 100 percent in 12 months."

ment that the matter be submitted to the Superior Court was deleted. See Public Acts 1989, No. 89-360, § 11. The statute now simply provides that "[f]amily support magistrates shall enforce orders for child and spousal support . . . by citing an obligor for contempt." General Statutes § 46b-231 (m) (7).[3]

This court has had one previous opportunity to consider the constitutionality of the Family Support Magistrate's Act. In *DiBerardino* v. *DiBerardino,* supra,

[3] General Statutes § 46b-231 (m) (7) provides: "Family support magistrates shall enforce orders for child and spousal support entered by such family support magistrate and by the superior court in IV-D support cases by citing an obligor for contempt. Family support magistrates may require the obligor to furnish recognizance to the state of Connecticut in the form of a cash deposit or bond of such character and in such amount as the family support magistrate division deems proper to assure appearance at the next regular session of the family support magistrate division in the judicial district in which the matter is pending. Upon failure of the obligor to post such bond, the family support magistrate may refer the obligor to a community correctional center until he has complied with such order, provided that the obligor shall be heard at the next regular session of the family support magistrate division in the court to which he was summoned. If no regular session is held within seven days of such referral, the family support magistrate shall either cause a special session of the family support magistrate division to be convened, or the obligor shall be heard by a superior court judge in the judicial district. If the obligor fails to appear before the family support magistrate at the time and place he is ordered to appear, the family support magistrate may order the bond, if any, forfeited, and the proceeds thereof paid to the state in AFDC cases or the obligee in non-AFDC cases, as the family support magistrate may determine, and the family support magistrate may issue a capias mittimus for the arrest of the obligor, ordering him to appear before the family support magistrate. A family support magistrate may determine whether or not an obligor is in contempt of the order of the superior court or of a family support magistrate and may make such orders as are provided by law to enforce a support obligation, except that if the family support magistrate determines that incarceration of an obligor for failure to obey a support order may be indicated, the family support magistrate shall inform the obligor of his right to be represented by an attorney and his right to a court-appointed attorney to represent him if he is indigent. If the obligor claims he is indigent and desires an attorney to represent him, the family support magistrate shall conduct a hearing to determine if the obligor is indigent; and if he so finds, he will appoint an attorney to represent him."

377-78, a family support magistrate made "a finding of fact and report to the court" in accordance with the provisions of General Statutes § 46b-86 (c). We upheld the constitutionality of such a proceeding. We rejected the contention that the method of appointment of family support magistrates violated article fifth, § 2 of our state constitution,[4] because in *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 501, 508 A.2d 415 (1986), we had concluded that the appointment of attorney referees, similarly charged with the duty of finding facts and rendering a report to a judge of the Superior Court, did not conflict with this constitutional provision. *DiBerardino* v. *DiBerardino,* supra, 384. We also concluded that the duties of a family support magistrate, acting as factfinder under § 46b-231 (f), did not encroach upon the independent power of the judiciary or violate the separation of powers established in article second of our state constitution.[5] Id.; see *Seal Audio, Inc.* v. *Bozak, Inc.,* supra; *Monroe* v. *Monroe,* 177 Conn. 173, 180, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We expressly reserved, however, the question of the constitutionality of a family support magistrate's exercise of greater authority under General Statutes § 46b-231 (m). *DiBerardino* v. *DiBerardino,* supra, 378.

## B

In this case, the defendant's principal challenge to the constitutionality of the family support magistrate's

[4] Article fifth, § 2 of the Connecticut constitution, as amended, provides in relevant part: "The judges of the supreme court, of the appellate court and of the superior court shall, upon nomination by the governor, be appointed by the general assembly in such manner as shall by law be prescribed. They shall hold their offices for the term of eight years, but may be removed by impeachment."

[5] Article second of the Connecticut constitution, as amended, provides in relevant part: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

exercise of his statutory contempt power under General Statutes § 46b-231 (m) (7)[6] is his contention that such authority cannot be conferred on a magistrate without encroaching on the authority of the Superior Court and impairing the constitutional mandate of separation of powers. He maintains that only judges may constitutionally exercise the power to incarcerate. We disagree.[7]

Any party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 590, 590 A.2d 447 (1991); *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675, 587 A.2d 1014 (1991). The trial court rejected the defendant's contention on the basis of a line of cases in which this court recognized the authority of the legislature to establish courts inferior to the Superior Court. In *Szarwak* v. *Warden,* 167 Conn. 10, 38, 355 A.2d 49 (1974), we held that "[t]he indispensible requirement, which, if observed, accompanies the apportionment of jurisdiction with no offense to the constitutional intendment is that the legislatively ordained courts be inferior to a superior court." (Internal quotation marks omitted.) We acknowledged the legitimacy, both from a point of view of public policy and as a constitutional matter, of permitting inferior courts to screen "small causes from the court of general jurisdiction thereby preventing its dockets from becoming clogged with numerous proceedings of comparatively little importance . . . ." Id. Citing *Walkinshaw* v. *O'Brien,* 130

---

[6] The statutory authority of the family support magistrate to "enforce orders for child and spousal support . . . by citing an obligor for contempt" is authority to find a civil and not a criminal contempt. See *Dunham* v. *Dunham,* 217 Conn. 24, 28 n.3, 584 A.2d 445 (1991).

[7] We note with regret that this important constitutional issue has come to this court with briefing by the state that is singularly inadequate in its research and in its analysis.

Conn. 122, 135–36, 32 A.2d 547 (1943), for the proposition that " 'any vesting of jurisdiction in any inferior court must necessarily take something from the jurisdiction of the Superior Court,' " we concluded that "[t]he test determinative of the constitutionality of a statute granting jurisdiction to a lower court is . . . one of degree." *Szarwak* v. *Warden,* supra, 39–40. Applying this balancing test, we held that the legislature had crossed the line into unconstitutionality by conferring criminal jurisdiction on the Circuit Court to impose fines of $5000 or imprisonment of five years or both. Id., 45.

The test established by *Szarwak* v. *Warden,* supra, suggests that the Family Support Magistrate's Act does not unconstitutionally encroach upon the authority of the Superior Court. The jurisdiction conferred by that act is confined precisely to the kinds of cases that, although important to the parties, have limited jurisprudential significance for the development of the law. In addition, as the trial court noted, a litigant disappointed by the final decision of a family support magistrate has an extensive statutory right of appeal to the Superior Court.[8]

---

[8] General Statutes § 46b-231 provides in relevant part: "(n) APPEAL PROCEDURE. (1) A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section.

"(2) Proceedings for such appeal shall be instituted by filing a petition and payment of a fifty-five dollar filing fee in superior court for the judicial district in which the decision of the family support magistrate was rendered not later than fourteen days after filing of the final decision with an assistant clerk assigned to the family support magistrate division or, if a rehearing is requested, not later than fourteen days after filing of the notice of the decision thereon. Such petitions shall be accompanied by a certification that copies of the petition have been served upon the IV-D agency as defined in subsection (b) of this section and all parties of record. Service upon the IV-D agency may be made by the appellant mailing a copy of the petition by certified mail to the office of the attorney general in Hartford.

We are not persuaded that the authority conferred upon a family support magistrate to enforce orders of

"(3) Within fourteen days after the filing of the petition, or within such further time as may be allowed by the court, the family support magistrate division shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding appealed from, which shall include the decision of the family support magistrate. The court may require or permit subsequent corrections or additions to the record.

"(4) The aggrieved party shall file with his appeal a statement that no transcript is required for the purpose of determining the issues raised on appeal or a statement that he has ordered a transcript. A transcript may be filed by any party to an appeal and shall be filed within thirty days from the filing of said appeal unless the time for filing such transcript is extended by order of the superior court or the family support magistrate. Costs of preparing the transcript shall be paid by the party ordering the preparation of the transcript.

"(5) If, before the date set for hearing, application is made to the superior court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the family support magistrate, the superior court may permit additional evidence be taken before it upon conditions determined by the court.

"(6) The appeal shall be conducted by the superior court without a jury and shall be confined to the record and such additional evidence as the superior court has permitted to be introduced. The superior court, upon request, shall hear oral argument and receive written briefs.

"(7) The superior court may affirm the decision of the family support magistrate or remand the case for further proceedings. The superior court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"(8) Any order entered by the court pursuant to an appeal under this subsection may be retroactive to the date of the original order entered by the family support magistrate.

"(9) Upon all such appeals which are denied, costs may be taxed in favor of the prevailing party at the discretion of the superior court, but no costs shall be taxed against the state.

"(10) In any case in which any party claims that he cannot pay the costs of an appeal or defending an appeal under this section, he shall, within the time permitted for filing the appeal, or the time permitted for filing of a

contempt compels us to reach a different result. As a general matter, we note that inferior courts have the power to impose sanctions for contempt of court; we have never singled out this aspect of their authority in deciding when their jurisdiction was unconstitutionally broad.[9]

transcript of testimony if preparation of such transcript is required, file with the clerk of the superior court to which the appeal is to be taken an application for waiver of payment of such fees, costs and necessary expenses. The application shall conform to rules adopted pursuant to section 51-14. After such hearing as the superior court determines is necessary, the superior court shall enter its judgment on the application, which judgment shall contain a statement of the facts the superior court has found, with its conclusions thereon. The filing of the application for the waiver shall toll the time limits for the filing of an appeal until such time as a judgment on such application is entered.

"(o) APPEALS TO APPELLATE AND SUPREME COURTS. Upon final determination of any appeal from a decision of a family support magistrate by the superior court, there shall be no right to further review except to the appellate court. The procedure on such appeal to the appellate court shall, except as otherwise provided herein, be in accordance with the procedures provided by rule or law for the appeal of judgments rendered by the superior court unless modified by rule of the judges of the appellate court. There shall be no right to further review except to the supreme court pursuant to the provisions of section 51-197f.

"(p) ORDER OF SUPPORT CONTINUED DURING APPEAL OR UNTIL CHANGED BY FURTHER ORDER. The filing of an appeal from a decision of a family support magistrate does not affect the order of support of a family support magistrate, but it shall continue in effect until the appeal is decided, and thereafter, unless denied, until changed by further order of a family support magistrate or the superior court.

"(q) ORDER ISSUED BY SUPERIOR COURT SUPERSEDES PREVIOUS ORDERS. When an order for child or spousal support has been entered against an obligor by the superior court in an action originating in the superior court, such order shall supersede any previous order for child or spousal support against such obligor entered by a family support magistrate and shall also supersede any previous agreement for support executed by such obligor and filed with the family support magistrate division."

[9] The federal injunction that magistrates not be denominated "judges" does not undercut the state constitutional reality that the family support magistrate's division functions as an inferior court. Our constitution does not assign talismanic significance to labels.

Furthermore, we have never held that the power to imprison someone for contempt is exclusively a judicial power. The constitutionality of a statute giving nonjudicial personnel authority to imprison for contempt was confirmed by this court in *In re Application of Clark,* 65 Conn. 17, 31 A. 522 (1894). In that case, we upheld the authority of a grand jury, pursuant to its statutory authority, to imprison for contempt a witness who had refused to testify. After jailing the witness, the grand jurors had requested a justice of the peace to issue a mittimus confirming the order of contempt. The justice of the peace complied without putting the witness to plea or permitting him to be heard. Id., 19–20. We upheld the constitutionality of this procedure despite claims by the witness that the grand jury's contempt order encroached on judicial authority and violated the principle of separation of powers. Id., 38.

In reaching this result, we expressly recognized the authority of the legislature to authorize the restraint of a person "where such restraint is necessary to the execution of the law and the enforcement of police regulations." Id., 30. We noted, with approval, the power of tax collectors summarily to jail any citizen for refusal to pay his taxes. Id. We remarked that the power to jail a witness for refusal to testify had properly been conferred by the legislature on county commissioners, the board of pardons, police commissioners and coroners. Id., 33. The power to imprison a recalcitrant citizen for disobedience of a lawful command "is not distinctly a judicial power; it may be exercised by administrative as well as by judicial officers, and is in its essence, so far as it can be called distinctive of any department, distinctively an administrative power." Id., 32. We went on to note that "[e]xecutive, legislative, and judicial powers, of necessity overlap each other, and cover many acts which are in their nature

common to more than one department [of government]." Id., 38; see also *In re Clayton*, 59 Conn. 510, 519–20, 21 A. 1005 (1890).

We need not decide whether we would today continue to apply the principles enunciated in *In re Application of Clark*, supra, to the statutory conferral of contempt authority on any and all administrative agencies.[10] Like all infringements of personal liberty, conferral of the contempt power should be closely scrutinized to ensure that proper safeguards circumscribe its exercise. The appropriate test is not, however, whether the contempt power is exclusively judicial but rather whether the legislature has conferred such power on a quasijudicial authority that commands respect because of the expertise and training of its membership. See E. Albertsworth, "Administrative Contempt Powers: A Problem in Technique," 25 A.B.A. J. 954, 956–57 (1939). Applying that test to the contempt power conferred upon the family support magistrates in this state, we conclude that § 46b-231 (m) (7) passes constitutional muster. Not only are the family support magistrates full time appointees with prior experience as lawyers trained in family law, but they are subject to the Code of Judicial Co. luct and to the supervision of the Judicial Review Council. See General Statutes §§ 51-51g, 51-51h, 51-51i, 51-51j and 51-51n.

The case law in other jurisdictions is not uniform. For cases consistent with *In re Application of Clark*, supra, see, e.g., *Plunkett* v. *Hamilton*, 136 Ga. 72, 74–78, 70 S.E. 781 (1911) (imprisonment by board of police com-

---

[10] The legislature has conferred the power summarily to imprison for contempt on many nonjudicial officers. See, e.g., General Statutes §§ 1-82, 9-346b, 52-434 (state trial referee); General Statutes § 7-279 (municipal board of police commissioners); General Statutes § 45a-66 (council on probate judicial conduct); General Statutes § 51-91 (statewide grievance committee); General Statutes § 52-429 (auditors and committees appointed by any court). The constitutionality of these provisions is not before us on this appeal.

missioners); *Dogge* v. *State,* 21 Neb. 272, 278–80, 31 N.W. 929 (1887) (imprisonment by notary public); but see contra, e.g., *Langenberg* v. *Decker,* 131 Ind. 471, 31 N.E. 190 (1892) (imprisonment imposed by state board of tax commissioners); *Wright* v. *Plaza Ford,* 164 N.J. Super. 203, 395 A.2d 1259 (1978) (fine and imprisonment imposed by workers' compensation division), and cases cited therein; *Appalachian Power Co.* v. *Public Service Commission,* 296 S.E.2d 887 (W. Va. 1982) (fine imposed by commission), and cases cited therein. The most closely analogous of the out-of-state precedents, as well as the most recent, is *Kennedy* v. *Kenney Mfg. Co.,* 519 A.2d 585, 586 (R.I. 1987), which recognized that the performance of the duties of a workers' compensation commissioner necessitated the authority to punish for contempt. As in the case of workers' compensation commissioners, our legislature could reasonably have concluded that family support magistrates must have contempt powers in order effectively to expedite the enforcement of support orders within their jurisdiction.

A number of other states have enacted statutes similar to ours to permit officials who are not judges to adjudicate family support matters expeditiously. Although two of these statutes have been invalidated as violating the separation of powers principle of the applicable state constitutions, those cases are not persuasive because they hold, contrary to *DiBerardino* v. *DiBerardino,* supra, that nonjudicial tribunals cannot undertake factfinding with respect to matters constitutionally reserved for the courts. See *Drennen* v. *Drennen,* 229 Neb. 204, 426 N.W.2d 252 (1988); *Starcher* v. *Crabtree,* 348 S.E.2d 293 (W. Va. 1986).

We conclude, therefore, that the contempt power conferred on family support magistrates by § 46b-231 (m) (7) does not unconstitutionally encroach upon the power of the judiciary or violate the principle of separation

of powers. The defendant has also challenged the constitutional validity of his incarceration under the due process clauses of the fifth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution. To the extent that this contention rests on the premise that only a judge of the Superior Court may constitutionally order incarceration for contempt, this argument is indistinguishable from the separation of powers argument that we have already rejected. To the extent that the defendant contends that he was, as a matter of due process, entitled to a stay of his incarceration upon his taking of a timely appeal, this contention must await litigation by someone in a position to raise it. Having waited to seek a stay until after his release from incarceration, the defendant in this case could not request a stay and the family support magistrate had no opportunity to examine the merits of such a request. We do not consider due process claims in a vacuum.

The judgment is affirmed.

In this opinion CALLAHAN, GLASS and BORDEN, Js., concurred.

BERDON, J., dissenting. The majority misconstrues the issue in this case. It suggests that "the defendant's principal challenge to the constitutionality of the family support magistrate's exercise of his statutory contempt power under General Statutes § 46b-231 (m) (7) is his contention that such authority cannot be conferred on a magistrate without encroaching on the authority of the Superior Court and impairing the constitutional mandate of separation of powers." At issue is not encroachment of the Superior Court's authority or the mandate of separation of powers, but rather who is constitutionally vested with the authority to hold and incar-

cerate for contempt—that is, which officer has the jurisdiction to deprive another individual of his or her personal liberty.

The power to punish for contempt has long been a judicial one, and that power can only be exercised by a judicial decision maker authorized by the state constitution, whether or not he or she is designated as a justice, judge or magistrate. "Only the courts can give the command which takes from the citizen his liberty and places him within prison walls, and they can only give it in accordance with the law of the land." *Langenberg* v. *Decker*, 131 Ind. 471, 488, 31 N.E. 190 (1892) (Eliott, C. J., concurring). Here, pursuant to the provisions of § 46b-231 (m) (7),[1] we deal with a statute that confers on family support magistrates, who are not appointed in accordance with the state constitution, the open-ended power to deprive a person of his liberty, not for days, weeks or months, but for an unspecified, unlimited period of time. Clearly, it is a judicial power to be exercised only by a constitutional judge.

The judicial powers of this state are "vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law." Conn. Const., art. V, § 1, as amended by art. XX, § 1 of the amendments.[2] Accordingly, I do not question the

---

[1] See footnote 3 of the majority opinion.

[2] Article fifth, §§ 1 and 2 of the Connecticut constitution, as amended by articles XX and XXV of the amendments, provides: "Sec. 1. The judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law.

"Sec. 2. Judges of all courts, except those courts to which judges are elected, shall be nominated by the governor exclusively from candidates submitted by the judicial selection commission. The commission shall seek and recommend qualified candidates in such numbers as shall by law be

authority of the legislature to enact legislation that would create a magistrate court, as a lower court, which is presided over by a magistrate who holds the power to incarcerate persons for contempt. But, in doing so, the legislature must require that the magistrates meet the mandate of article fifth, § 2, as amended—that is, the requirement that constitutional decision makers are nominated by the governor, from candidates approved by the judicial selection commission and appointed by the legislature.[3] Simply put, once a magistrate has been given the power to deprive a person of his or her liberty under § 46b-231 (m) (7), the magistrate has become a judge within the meaning of article fifth, § 2, as amended. Currently, family support magistrates are only "appointed by the governor." General Statutes § 46b-231 (f). They fail, therefore, to meet the requirements of a constitutional judicial decision maker because they are neither nominated from the approved list of the judicial selection commission nor appointed by the legislature.

Although I recognize that the court, in *In re Application of Clark,* 65 Conn. 17, 31 A. 522 (1894), held that the legislature could confer the power of contempt on a nonconstitutional decision maker, the reasoning of *Clark,* decided nearly one hundred years ago, has never been adopted in a subsequent case in Connecticut or any other jurisdiction. See R. Goldfarb, The Contempt Power (1964) p. 137. The court in *Clark* took the extreme view that "[t]he restraint of the person may

prescribed. Judges so nominated shall be appointed by the general assembly in such manner as shall by law be prescribed. They shall hold their offices for the term of eight years, but may be removed by impeachment. The governor shall also remove them on the address of two-thirds of each house of the general assembly and the supreme court may also remove them as provided by law."

[3] The Connecticut constitution also requires that constitutional decision makers hold office for a term of eight years. See footnote 2, supra.

be authorized by the legislature without the intervention of any court, in many cases where such restraint is necessary to the execution of the law and the enforcement of police regulations." *In re Application of Clark,* supra, 30.

In *Clark,* as precedent to support its claim that nonconstitutional decision makers have the power to deprive a person of his or her liberty, the court relied on the following disturbing examples: "The defendant in a civil action who refuses to turn out property for attachment may be committed to jail without trial. Selectmen may, without trial, take children from the custody of parents who neglect them, and bind them out to masters. General Statutes [1888 Rev.] § 2109. For certain infringements of the pauper laws they may, without trial, order an inhabitant of another State to be forcibly taken out of this State, and may expel from their town the inhabitant of another town; §§ 3292, 3293. A tax collector may, if necessary, commit to jail a citizen refusing to pay his taxes, there to remain until payment is made, or he be discharged in due course of law; § 3889. A collector who fails to collect and pay over the taxes may himself, without trial, be committed to jail, as on execution after judgment; § 3879. The moderator of any town meeting, or of any meeting of any society or other community, may order into custody any person who refuses to submit to his lawful authority, and have him forcibly removed until he shall conform to order; § 52. The instance are numerous and familiar where officers are authorized to restrain, without trial and even without process, persons who persist in the open violation of law. This power of summary compulsion to compliance with law may be committed to administrative as well as to judicial officers; and when committed to judicial officers they act solely in an administrative capacity, unless the power is exercised in the course of judicial proceedings." Id., 30. By

endorsing *Clark,* does the majority implicitly approve of legislation that would empower the tax commissioner to hold in contempt and to punish for failure to pay taxes, and so on? Following the express language of *Clark* could only lead to that result. The outrageous language in *Clark,* although it may have been the law in this state years ago, should not guide this court, in this century, under our state constitution. Instead, we should follow the reasoning of other jurisdictions.

The Supreme Court of Colorado held that "[t]he power to punish for contempt is a judicial power within the meaning of the Constitution. It belongs exclusively to the courts, except in cases where the Constitution confers such powers upon some other body." *People v. Swena,* 88 Colo. 337, 340, 296 P. 271 (1931). Similarly, the Supreme Judicial Court of Massachusetts held that "the Legislature cannot delegate to or confer upon municipal boards or officers, that are not courts of justice, and whose proceedings are not an exercise of judicial power, the authority to imprison and punish, without right of appeal or trial by jury." *Whitcomb's Case,* 120 Mass. 118, 124 (1876).

The Supreme Court of Missouri held that the power to punish for contempt "is not a power granted by the Legislature to be held or withdrawn as the Legislature may see fit or to be farmed out to any other body. The Legislature can no more command the court to use the judicial power of punishing for contempt in order to enforce obedience to a non-judicial body than it can command the court to use its judicial function to give to the decision of a non-judicial board the character of a judgment." *State ex rel. Haughey v. Ryan,* 182 Mo. 349, 356–57, 81 S.W. 435 (1904); see also *Langenberg v. Decker,* supra, 483 (power to punish for contempt belongs exclusively to the courts, unless state constitution expressly confers power upon other body); *Wright v. Plaza Ford,* 164 N.J. Super. 203, 395 A.2d

1259 (1978) (exercise of contempt power by workers' compensation division held unconstitutional); *Appalachian Power Co.* v. *Public Service Commission,* 296 S.E.2d 887 (W. Va. 1982) (exercise of contempt power by public service commission held unconstitutional).

The power to order contempt and to deprive an individual of personal liberty, cannot be doled out among persons who have not assumed their offices through a constitutional route that ensures three levels of approval—the judicial selection commission, the governor and the legislature. Decisions in other jurisdictions recognize the need to limit the power afforded to nonjudicial figures. E. Albertsworth, "Administrative Contempt Powers: A Problem in Technique," 25 A.B.A. J. 954, 957–58 (1939), quoted in *Appalachian Power Co.* v. *Public Service Commission,* supra, 890. "In free countries courts always have assumed jurisdiction of questions involving personal liberty, and so they must, or else free government, securing personal liberty, ceases to exist. When that great right comes in issue, the courts hear and decide, and the authority of executive or administrative officers is at end. Whatever else such officers may be empowered to do, they can not be empowered to sit in judgment upon the right of a citizen to his personal liberty." *Langenberg* v. *Decker,* supra, 488 (Elliott, C. J., concurring).

I am not sure whether the majority realizes the implications of its decision today. First, its approval of § 46b-231 (m) (7) allows nonconstitutional decision makers to deprive individuals of their personal liberty for an indefinite time. Second, this decision opens the door to legislation that would allow for the appointment of persons with the jurisdiction of constitutional judges without undergoing merit selection and approval by the legislature. Unfortunately, not only does the majority base its conclusion upon precedent that dates back

almost one hundred years, but it also returns us to the manner in which we selected our judges in those days.

I would find that portion of General Statutes § 46b-231 (m) (7) which authorizes statutory magistrates to cite a person for contempt and to incarcerate that person in "a community correctional center until he has complied with such order [of the magistrate]," to be unconstitutional.

Accordingly, I dissent.

