GRACE COMMUNITY CHURCH *v.* TOWN
OF BETHEL ET AL.
(11312)

DUPONT, C. J., LAVERY and SCHALLER, Js.

Argued January 13—decision released March 30, 1993

*John W. Mauck,* pro hac vice, with whom were *Jerome A. Mayer* and *James M. Mannion,* for the appellant (plaintiff).

*Stephen C. Gallagher,* for the appellees (defendants).

SCHALLER, J. The plaintiff appeals from the judgment of the trial court rejecting its claim that certain of the Bethel zoning regulations are unconstitutional. The plaintiff claims that the regulations abridged its rights under the first and fourteenth amendments to the United States constitution, and, therefore, the trial court improperly denied (1) injunctive and declaratory relief, and (2) damages pursuant to 42 U.S.C. § 1983. We affirm the judgment of the trial court.

The following facts are not in dispute. The plaintiff, Grace Community Church, was founded in 1982. Initially, the members of the church congregated at various locations, not having a permanent facility of their own. They searched for a suitable location to build a church, primarily in the greater Danbury area. In 1985, the plaintiff entered into negotiations to purchase real property at the intersection of Weed and Walnut Hill Roads in the town of Bethel. This property was located in an R-40 residential zone. Pursuant to the regulations, the property was zoned to permit single family residences. Bethel Zoning Regs. § 118-24 A.[1] Other uses,

[1] Section 118-24 A of the Bethel zoning regulations provides in pertinent part: "Permitted Uses. No land [in an R-40 zone] shall be used or occupied and no structure shall be designed, erected, altered, used or occupied except for only one (1) of the following permitted uses . . .

(1) One-family dwelling, one (1) per lot.

(2) Home business, home office or professional office . . . .

(3) A customary incidental home occupation . . . .

(4) Community recreation facility, not including an amusement park or privately owned facility.

(5) Farming, dairy, truck or nursery gardening . . . .

(6) Library, public.

(7) Public park and public playground or public recreational facility operated by a governmental unit . . . .

(8) Public telephone.

(9) A single guest cottage . . . .

(10) Tag sale [with permit once every calendar year] . . . .

(11) Water reservoir.

(12) Family day-care home."

including churches, clubs and community centers were allowed only by special permit. Bethel Zoning Regs. § 118-24 B.[2]

The plaintiff acquired an option to purchase the property and initiated proceedings to obtain a special permit from the zoning and planning commission. The commission granted the plaintiff a special permit, finding that the proposed use complied with the regulations. Abutting property owners, however, appealed the commission's decision to the Superior Court. During this appeal period, the plaintiff purchased the property pursuant to its option. Subsequently, the court sustained the administrative appeal on the ground that the commission improperly considered evidence offered after the close of the public hearing.

On July 10, 1990, the plaintiff submitted a second application to the commission for a special permit. The commission conducted a public hearing at which neighbors voiced their opposition to the application. The commission thereafter voted to deny the application, citing

---

[2] Section 118-24 B of the Bethel zoning regulations provides in pertinent part: "Special permit uses. The following uses are permitted subject to the granting of a special permit by the Planning and Zoning Commission after a public hearing:

(1) A cemetery . . . .

(2) Church, parish hall and parish housing, including a convent or other similar residence for clergy.

(3) Club.

(4) Community center building, which shall have no outdoor public address system or any other type of outdoor amplified music device.

(5) Day-care or nursery school.

(6) Electrical substation. . . .

(7) Fire station.

(8) Gas regulator station. . . .

(10) Home business, home office or professional office as defined under § 118-24 A (2), but employing two (2) or more persons not residing on premises. . . .

(12) A library or museum operated by a nonprofit corporation. . . .

(14) A nursing or convalescent home. . . .

(18) A private golf, tennis or swim club . . . ."

the potential for conditions adversely affecting the flow of traffic. See Bethel Zoning Regs. § 118-21 H. The plaintiff appealed the commission's decision to the Superior Court.

The plaintiff also filed a separate action in the Superior Court challenging the constitutionality of the regulations. In this action, the plaintiff sought injunctive and declaratory relief as well as damages pursuant to 42 U.S.C. § 1983. The trial court consolidated these two actions and considered extensive evidence on the matter. On March 17, 1992, the trial court sustained the plaintiff's administrative appeal and ordered the commission to issue the special permit. On April 14, 1992, the commission granted the plaintiff a special permit to build a church on the property at issue.

In a second memorandum of decision, dated July 16, 1992, the trial court found that its disposition of the administrative appeal rendered "academic" further consideration of the plaintiff's claims for injunctive and declaratory relief. The court did, however, consider the plaintiff's claim for damages.[3] On this claim, the court concluded that "[s]ince the plaintiff has not proven a violation of any federal[4] constitutional right or statute, there is no basis for a § 1983 action." The court thus

---

[3] The trial court's decision in this regard is unclear. At one point in its memorandum of decision, the court stated that the issue of damages was academic. At another point, the court held that "[t]he issuance of a special permit eliminates any rights the plaintiff may have had under the first count of the complaint for an injunction and similar relief, but does not prevent an action for damages for conduct prior to issuance of the permit." The court went on to state that the plaintiff failed to prove a violation of 42 U.S.C. § 1983. On the basis of the court's action, it is apparent that the court did not treat the claim for damages as a moot issue.

[4] We note that the plaintiff also asserts that the applicable zoning regulations abridged its rights under the state constitution. We decline to review these claims because the plaintiff has not put forth a separate and detailed analysis regarding these issues. State v. Hernandez, 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987).

denied the plaintiff the relief requested in connection with its challenge to the constitutionality of the regulations. This appeal followed.

I

The plaintiff asserts that the trial court improperly rejected its claim for injunctive and declaratory relief. It posits that the special permit provision of the regulations is unconstitutional and threatens to impede any *future* plans that it might have regarding the expansion of its facility. Because the plaintiff's claim for declaratory relief is based on hypothetical facts, we are without jurisdiction to decide this issue.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Perry* v. *Perry,* 222 Conn. 799, 803, 611 A.2d 400 (1992); *Schallenkamp* v. *DelPonte,* 29 Conn. App. 576, 579, 616 A.2d 1159 (1992). Courts are without jurisdiction to review moot issues, unless the issue presented is " 'capable of repetition, yet evading review.' " *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 573, 499 A.2d 1158 (1985).

"[W]here the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, it may be capable of repetition, yet evading review. . . . In deciding whether to invoke this mitigating principle, we have considered not only the practical difficulties of timely judicial review but also (1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the state's penal or civil system; and (3) the possibility of a similar effect on the plaintiff himself

in the future. . . ." (Citations omitted; internal quotation marks omitted.) *Perry* v. *Perry,* supra.

In this case, the plaintiff's claim for injunctive and declaratory relief clearly is moot. The commission having issued the plaintiff a special permit, the plaintiff is free to build a church on its property in accordance with the approved plans. The plaintiff, therefore, has no present need for relief that would limit the applicability of the allegedly unconstitutional regulations. The regulations no longer stand as an obstacle to the plaintiff's existing plans to build a church. In light of the mootness doctrine, therefore, we have no jurisdiction to consider the plaintiff's claim for injunctive and declaratory relief.

The plaintiff argues that it *may* want to expand its facility at a later date. It appears that the plaintiff is attempting to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine, though its argument is not stated in these precise terms. This exception is unavailing, however, because there is nothing to suggest that litigation involved in obtaining a *second* special permit will expire before the plaintiff could seek appellate review. Further, while the plaintiff's constitutional claims may well be of public importance, this factor alone does not warrant an exception to the mootness doctrine. *Shays* v. *Local Grievance Committee,* supra ("[t]his court has never asserted jurisdiction over a case that would otherwise be moot simply on the ground of the public importance of the question presented"). We conclude that the plaintiff's claim for injunctive and declaratory relief does not fall within the aegis of the "capable of repetition, yet evading review" exception to the mootness doctrine.

## II

The plaintiff also asserts that the trial court improperly rejected its claim for damages pursuant to 42

U.S.C. § 1983. In support of this argument, the plaintiff asserts that the special permit process abridged its constitutional rights under the first and fourteenth amendments. We disagree.

We note at the outset that the mootness of the plaintiff's claims for injunctive and declaratory relief does not preclude our review of the claim for damages pursuant to § 1983. In *Hallas* v. *Windsor*, 217 Conn. 689, 692, 587 A.2d 149 (1991), our Supreme Court made abundantly clear that "while cessation of allegedly unconstitutional or illegal activity may render moot a claim for injunctive relief, such cessation will not render moot a case that also states a claim for damages resulting from such activity *prior to* its cessation." (Emphasis added.) Therefore, despite our holding in part I of this decision, we do have jurisdiction to address the plaintiff's claim that the trial court improperly rejected the § 1983 claim. The question is whether the plaintiff's prior efforts to procure a special permit were expended pursuant to unconstitutional zoning regulations thereby giving rise to a § 1983 action for damages.

The plaintiff's success under § 1983 hinges on whether the regulations at issue deprived it of a federal right. *Tedesco* v. *Stamford*, 215 Conn. 450, 456, 576 A.2d 1273 (1990). Specifically, we must consider whether the special permit provision of the regulations violated (1) rights to freedom of religion, association, assembly and expression under the first amendment, (2) rights to equal protection under the fourteenth amendment, and (3) rights under the takings clause of the fifth amendment.

Before turning to these claims individually, we note that it is axiomatic that local governments are constitutionally authorized to regulate land use. *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 580, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S.

Ct. 43, 93 L. Ed. 2d 373 (1986). "[Z]oning restrictions, so far as they reasonably promote public health, safety, and welfare without depriving landowners of all economically viable use of their property, are constitutional even though the effect of the restrictions may be to limit the exercise of private property rights." Id.

### A

The plaintiff asserts that the procedures associated with procuring a special permit violated its first amendment right to freedom of religion and assembly. We disagree. Our Supreme Court in *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn 712, 720, 184 A.2d 42 (1962), established that while "churches may not be wholly excluded from residential zones . . . even they may be subject to reasonable regulation regarding their location without violating the constitutional guarantee of freedom of religion." (Citations omitted.) In this case, as in *St. John's,* the issue is whether a zoning regulation is reasonable if it allows churches and related assemblies in a residential neighborhood only upon the issuance of a special permit. We are fully satisfied that this special permit process is a reasonable restriction.

In *Barberino Realty & Development Corporation* v. *Planning & Zoning Commission,* 222 Conn. 607, 612–13, A.2d 1205 (1992), our Supreme Court noted that "[c]ommon specially permitted uses . . . are hospitals, churches and schools in residential zones. These uses are not as intrusive as commercial uses would be, yet they do generate parking and traffic problems that, if not properly planned for, might undermine the residential character of the neighborhood." Accordingly, the special permit operates to ensure that "parking and traffic problems have been satisfactorily worked out . . . ." Id., 613; T. Tondro, Connecticut Land Uses p. 78. Clearly, the special permit process

is a reasonable response to the potential planning problems associated with the construction of a church in a residential neighborhood.

The facts of this case exemplify the appropriateness of the regulations at issue. The plaintiff enjoys the support of several hundred people from the greater Danbury community. An obvious purpose of a permanent church facility is to promote religious activities of its congregation. This purpose in turn implicates the safety and welfare of the residential area at issue given the likelihood of increased traffic and the potential for parking problems. The regulations thus respond appropriately to the possible adverse effects associated with the presence of a church in a residential neighborhood. We conclude that the zoning regulation at issue did not abridge the plaintiff's religious freedoms.

Regarding the plaintiff's claim that the regulations violated its right to free expression, we again are unpersuaded. "When zoning law constricts the realm of permissible expression . . . we employ a heightened level of scrutiny to determine whether the law is valid under the first amendment. . . ." *Husti* v. *Zuckerman Property Enterprises, Ltd.,* supra. "[A] content-neutral zoning regulation that restricts the permissible time, place, and manner of protected speech is constitutional under the first amendment if the regulation 'is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication.'" Id., 581, quoting *Renton* v. *Playtime Theatres, Inc.,* 475 U.S. 41, 50, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986).

In this case, there is no question that the regulations are content neutral. The zoning regulations are free of any reference to the plaintiff's religious practices. Further, the regulations do not isolate churches by themselves as specially permitted uses. Rather, the spe-

cial permit provision applies to other activities such as clubs, community centers and nursery schools.

The regulations also serve an important governmental interest. "A city has undeniably important interests in protecting the character of its residential neighborhoods and in promoting the health, safety, and welfare of its citizens." *Husti* v. *Zuckerman Property Enterprises, Ltd.*, supra, 581. The regulations at issue serve this important interest by ensuring that traffic and parking problems do not undermine the residential character of the neighborhood. "These are precisely the kinds of dangers that zoning is designed to combat . . . and that justify content-neutral regulation of the time, place, and manner of expression." (Citation omitted.) Id., 582. Moreover, the regulations do *not* exclude churches from the zone, but rather, require churches, such as the plaintiff, to establish that their plans are generally compatible with residential land uses. We conclude that the regulations did not violate the plaintiff's first amendment rights and that its claims in this regard do not support an action for damages under § 1983.

### B

We are also unpersuaded by the claim that the regulations at issue violated the plaintiff's right to equal protection. Our Supreme Court in *St. John's, Roman Catholic Church Corporation* v. *Darien*, supra, addressed a similar challenge to a special permit requirement. There, the regulation required parochial and private schools to obtain a special permit before operating in a residential zone. Id. Public schools, however, were not subject to the same requirement. Noting that the "basic question is whether some natural and substantial difference, germane to the subject and purposes of the regulations, permits the treatment of parochial and private schools as a class distinct from

public schools," the court rejected the plaintiff's equal protection challenge to the special permit provision. Id., 722.

Applying the analysis in *St. John's* to the special permit provision at issue, we conclude that the plaintiff's equal protection claim is without merit. Under the Bethel regulations, the permitted use, i.e., one family residences, patently differs from the specially permitted uses, i.e., churches, clubs and day-care facilities. Unlike one family dwellings, the presence of a church, such as the plaintiff with several hundred members, will invariably create the potential for significant traffic and parking problems, and other intrusions. We conclude that the regulations have not abridged the plaintiff's right to equal protection and that damages under § 1983 are unwarranted.

The plaintiff argues that the decision of the United States Supreme Court in *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985), militates against the constitutionality of the regulations. We disagree. In *Cleburne,* the court considered the constitutionality of a zoning ordinance that required a special use permit for a facility for the mentally retarded. Numerous other multidwelling facilities, however, were freely permitted in the same zone. Id.[5] The court held that the ordinance violated the equal protection clause. The court decided that the disparate treatment of the mentally retarded was not rationally related to a legitimate government interest because, for all practical purposes, a facility for the mentally retarded would have a similar impact on the zone as the freely permitted uses. Id., 450.

---

[5] For example, the ordinance freely permitted multidwelling facilities, hospitals, apartment houses, apartment hotels, private clubs and philanthropic or eleemosynary institutions. *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

We find the ordinance in *Cleburne* readily distinguishable from the regulations at issue. Unlike the ordinance in *Cleburne,* the Bethel regulations are based on the rational distinction between such minimally intrusive uses as one family dwellings and potentially more burdensome land uses such as churches. In short, through its zoning regulations, the town of Bethel has rationally classified land uses as either permitted, specially permitted or restricted in an effort to preserve the residential character of the R-40 zone.

## C

The plaintiff's final claim is that it is entitled to just compensation because "deprivation of property use from a facially unconstitutional zoning ordinance is a taking under the fifth amendment." The plaintiff has offered little more than a bare assertion that the zoning ordinance implicates the fifth amendment. We therefore decline to review this claim.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] In any event, we have already stated that the regulations at issue are not constitutionally deficient. Because the plaintiff's just compensation claim is based on the assertion that the regulations are unconstitutional, our previous discussion is dispositive of the claim.