[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR WRIT OF HABEAS CORPUS
I. Facts
Pursuant to a stipulation entered into between the parties, dated September 7, 1993 the following facts are uncontested. (See Plaintiff's Exhibit A) Samuel Blackburn was admitted to the psychiatric unit of the John Dempsey Hospital (Dempsey) on August 5, 1993. To obtain admission to the hospital under General Statutes Sec. 17a-506(a), Blackburn agreed that he would not leave the hospital without giving five days notice of his intentions. The psychiatric unit at Dempsey is a nineteen bed, open, unlocked unit. As an open unit, Dempsey is not equipped to CT Page 9022 provide ongoing patients who are continually a danger to themselves or others. Dempsey has a staff trained to deal with psychiatric emergencies and has locked seclusion rooms, restraint devices and a full range of psychotropic medications.
On or about August 19, 1993, Blackburn became extremely upset and threatening. He was placed in a locked seclusion room, where he threatened hospital staff and kicked a hole in the wall of the room. Blackburn picked a piece of broken plasterboard and threatened staff with it as well as indicating that he was going to injure himself. After Blackburn allowed himself to be approached by staff, he was placed in four point restraints and medicated. He was removed from the restraints for toileting and in the process of being moved from Dempsey smoked a cigarette. Meanwhile, however, Blackburn's psychiatrist, Dr. Bruce Greyson, decided that more appropriate care could be provided for him on a locked ward at Connecticut Valley Hospital (CVH), a facility operated by the Department of Mental Health. Dr. Greyson determined that Blackburn continued to be mentally ill and dangerous to himself or others. On that basis, Dr. Greyson executed an emergency certificate under General Statutes Sec.17a-502 and Blackburn was delivered to CVH the following day, August 20, 1993. CVH does provide care to numerous mentally ill patients who are dangerous to themselves or others. Clinical staff at CVH agreed with the opinion of Dr. Greyson that Blackburn was mentally ill and dangerous to himself and others and needed continuing hospitalization. However, a senior member of the clinical staff at CVH was initially unwilling to accept Blackburn at CVH, because he felt that Dempsey should provide the necessary care. After further consultation, Blackburn was accepted at CVH and placed in a locked unit. On September 1, 1993, Blackburn agreed to become a voluntary patient at CVH and, at the present time, continues to require hospitalization. An application for writ of habeas corpus was filed on August 27, 1993. On September 7, 1993, argument and the testimony of Dr. Greyson was heard by this court on the application for writ of habeas corpus.
II. Discussion
A. In General
An application for a writ of habeas corpus challenges the authority of one who has deprived another of his liberty. McClain v. Robinson, 189 Conn. 663, 668, 457 A.2d 1072 (1983). The writ of habeas corpus issues as a matter of right, but not as a matter of CT Page 9023 course, and only in the exercise of sound judicial discretion. Wojculewicz v. Cummings, 143 Conn. 624, 627, 124 A.2d 886
(1956). "A civil commitment involves a serious curtailment of an individual's personal liberty and, as such, requires adequate due process safeguards." Anonymous v. Superintendent of Hospital, 1977-3, 33 Conn. Sup. 208, 209, 370 A.2d 1317 (Superior Court, 1977); Melville v. Sabbatino, 30 Conn. Sup. 320, 313 A.2d 886
(Superior Court, 1973). "`There can be no doubt that involuntary commitment to a mental hospital . . . is a deprivation of liberty which the State cannot accomplish without due process of law.'" (Citation omitted.) Fasulo v. Arafeh, 173 Conn. 473, 476,378 A.2d 553 (1977) quoting O'Connor v. Donaldson, 422 U.S. 563,580, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). "`Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding." Fasulo v. Arafeh, supra, 476, quoting O'Connor v. Donaldson, supra. "In general, `the thoroughness of the procedure by which [a] deprivation is effected must be balanced against the gravity of the potential loss and interest at stake.'" Fasulo v. Arafeh, supra, 477, quoting Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles,165 Conn. 42, 45, 327 A.2d 588 (1973).
Under General Statutes Sec. 17a-450 et seq., which governs the care of mentally ill persons, two avenues exist by which an individual, in need of psychiatric hospitalization, may obtain such care: (1) by presenting themselves to a hospital and requesting in writing that the hospital observe and treat the individual as a voluntary patient, under General Statutes Sec. 17a-506(a), or (2) by involuntary hospitalization pursuant to a physician's emergency certificate (PEC), under General Statutes Sec. 17a-502.
 Section 17a-502 provides in pertinent part: Any person who a physician concludes is mentally ill and dangerous to himself and others or gravely disabled, and is in need of immediate care and treatment in a hospital for mental illness, may be confined in such A hospital . . . under an emergency certificate . . . for not more than fifteen days without order of any court, unless a written application for commitment of such person has been filed in a probate court prior to the expiration of the fifteen days, in which such event commitment is continued under the emergency certificate for an additional fifteen days or until the completion of probate proceedings, which ever occurs first. CT Page 9024
General Statutes Sec. 17a-502(a). Additionally, a second PEC shall not be used to admit or detain a patient for an additional fifteen days at any time during that patient's confinement pursuant to the original PEC, and in no event shall more than one subsequent PEC be issued within fifteen days of the execution of the original PEC. Id. If at the expiration of the fifteen day period, a written application for commitment has not been filed, pursuant to Section 17a-498, such person shall be discharged from the hospital. Id.
A person admitted and detained under Section 17a-502(a) is to be advised of his right to consult an attorney, his right to a hearing, and that if such a hearing is requested or a probate application is filed, a hearing shall be held within seventy-two hours of receipt of such request. General Statutes Secs. 17a-502(c), (d). The purpose of the probate court hearing, under Section 17a-502(d), is to determine whether probable cause exists to conclude that the person is subject to involuntary confinement. General Statutes Sec. 17a-502(d); see also General Statutes Sec. 17a-502(a).
 Voluntary admission into a psychiatric hospital occurs where a person, in writing, requests to be received by a treating hospital. Section 17a-506(a). Additionally, a person admitted under Section 17a-506(a) may not be confined for more than five days after the person has given the treating hospital written notice of his desire to leave. Id. However, during the above mentioned five day period, the hospital may file an application for commitment in probate court. Id. Section 17a-506(e) provides that if an application for commitment is filed by the treating hospital, the confinement of the person shall continue for an additional period of time in order for the respondent to prepare for the hearing . . . provided no such confinement shall be continued for more than fifteen days from the date of the filing of notice in writing of the desire to leave, and provided further such person shall not be confined . . . upon an emergency certificate issued prior to the discharge and within fifteen days . . . after such person gives notice of is or her desire to leave . . . such respondent shall have the right to a probable cause hearing under the provisions of section 17a-502.
General Statutes Sec. 17a-506(e).
B. Argument CT Page 9025
The petitioner argues that the execution of a PEC by Dr. Greyson, while the petitioner was a voluntary patient pursuant to Section 17a-506, and the subsequent transfer over the objection of the petitioner from a private care institution to the state operated CVH, is not authorized by the statutory scheme absent a court order. The petitioner alleges that he has been deprived the equal protection of the law in that his status as a voluntary patient and the liberty interest which attaches to that status has been violated without proper procedural protection. The petitioner also alleges that the transfer from Dempsey to CVH violates his right to due process of law. The petitioner argues that the statutory scheme confers upon the petitioner a protected liberty interest in his status as a voluntary patient with the right to choose a hospital for treatment which may not be abridged or suspended without the due process of law. The petitioner contends that no transfer may be effected without notice and a court hearing, and that, as a voluntary patient, the petitioner may not be transferred.
The respondent argues that the present application has been rendered moot by the petitioner's subsequent actions. The petitioner is presently not under confinement pursuant to the PEC which the application challenges. Rather, the respondent claims that because of the petitioner's current status as a voluntary patient under section 17a-506(a), the legality of the PEC has become moot.
The respondent also argues that section 17a-502 allows for the lawful execution of a PEC as to a person who is at the time a voluntary patient under Section 17a-506(a). In support of this argument the respondent contends that no provision of section 17a-502
limits the application of that statute to certain settings and there is no language in the statute which prohibits the execution of a PEC for a person who is a voluntary patient under section17a-506(a). The respondent argues that a voluntary patient is subject to a PEC prior to his giving notice of intent to leave and points to the language of Section 17a-506(a) which provides that a person:
 shall not be confined in any hospital, either public or private, upon an emergency certificate issued prior to discharge and within fifteen days . . . after such person gives notice of his or her desire to leave. . . .
The respondent contends that the language of section 17a-506
(a) exhibits a legislative intent to allow the execution of a CT Page 9026 PEC prior to a patient giving notice of their desire to leave the hospital in which he is a voluntary patient.
C. Mootness
In the instant case, the court must first determine whether it lacks jurisdiction to hear the application on the grounds of mootness. "`It is a well-settled general rule that the existence of an actual controversy is an essential requisite to . . . jurisdiction; it is not the province of . . . courts to decide moot questions; disconnected from the granting of actual relief or from the determination of which no practical relief can follow.'" Shays v. Local Grievance Committee, 197 Conn. 566, 571, 499 A.2d 1158
(1985), quoting Reynolds v. Vroom, 130 Conn. 512, 515,36 A.2d 22 (1944). "Courts are without jurisdiction to review moot questions." Grace Community Church v. Bethel, 30 Conn. App. 765,769 (1993). An exception to the mootness doctrine exists where an issue that is moot is nevertheless justiciable if "it is capable of repetition, yet evading review." (Citation omitted; internal quotation marks omitted.) Id. This exception may apply "where the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Id. "In deciding whether to invoke this mitigating principle, we have considered not only the practical difficulties of timely judicial review but also (1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the state's . . . civil system; and (3) the possibility of a similar effect on the plaintiff himself, in the future. (Citation omitted; internal quotation marks omitted.) Id., 769, 770; see also Perry v. Perry, 222 Conn. 799, 03, 611 A.2d 400 (1992). In this court's opinion, the present action satisfies the exception to the mootness doctrine as the present controversy is capable of repetition, yet evading judicial review.[1] Accordingly, this court finds that the present application has not been rendered moot by the action of the petitioner in voluntarily admitting himself to CVH.
D. Voluntary Admittance under General Statutes Sec. 17a-506(a):
General Statutes Sec. 17a-506 allows a patient to choose a hospital in which to seek psychiatric treatment. Section 17a-506(a). Under section 17a-506(a), a person requests of a hospital in writing, to be received for observation and care, and if accepted, the admitting hospital is bound by the terms of Section 17-506 in the processing of the patient. See Section 17a-506(e). Section 17a-506(a) provides that a voluntary patient shall not be confined for CT Page 9027 more than five days after the patient has given written notice of his or her intent to leave. An admitting hospital may continue to confine the patient only when it instituted commitment proceedings during the above mentioned five day period. Section 17a-506(a).
Where the treating hospital does institute commitment proceedings, the voluntary patient may be confined for an additional period of time not to exceed fifteen days from the filing of notice of intent to leave so as to allow the parties to prepare for the commitment proceedings. Section 17a-506(e). During this confinement, prior to commitment proceedings, the patient may seek release from confinement via a probable cause hearing pursuant to the provisions of section 17a-502. Id. Additionally, a voluntary patient, admitted under section 17a-506(a) "shall not be confined in any hospital . . . upon an emergency certificate issued prior to discharge and within fifteen days . . . after such person gives notice of . . . desire to leave." (Emphasis added.) Section 17a-506(e).
Both sections 17a-502 and 17a-506(e) are silent on the issue of whether a hospital may execute a PEC upon a patient already voluntarily confined before that patient notifies the hospital of his or her intention to leave. If the legislature had intended to permit such use of a PEC, then presumably it would have done so. See People's Bank v. Bilmor Building Corporation, 287 Conn. App. 809,818 (1992).
The above statutory language expresses a legislative intent, in the enactment of sections 17a-506(a) and (e), to provide and encourage voluntary psychiatric hospitalization for those in need of such care. One of the policies behind the enactment of sections 17a-506(a) and (e) is to promote alternative access to mental hospitalization, outside of commitment proceedings, and in so doing ameliorate the stigma attached to seeking hospitalization for a mental condition.
In contradistinction, the purpose of a PEC is to involuntarily admit for psychiatric care a person who is mentally ill and dangerous to himself or others or is gravely disabled, and is in need of immediate care and treatment in a hospital. General Statutes Sec. 17a-502(a). At issue is whether a PEC may be executed upon a voluntary patient before that patient gives notice of his or her intent to leave the hospital and whether pursuant to that PEC the patient may be transferred.
Sections 17a-506(a) and (e) contemplate that PEC is not to be CT Page 9028 issued upon a person, who realizing the need for psychiatric care, voluntarily gains admittance to a hospital. Voluntary admittance into a psychiatric hospital obviates the need for a PEC to be issued as the patient is already willingly admitted to a hospital for treatment. To allow the contrary will have a adverse effect on the legislative intent behind sections 17a-506(a) and (e), e.g., a person will not seek voluntary admission to a hospital of choice knowing that he may be involuntarily confined and/or transferred to an another hospital. "[It is] presume[d] the legislative had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Citation omitted.) Turner v. Turner, 219 Conn. 703, 713,595 A.2d 297 (1991); see also General Statutes Sec. 17a-506(e).
III. Conclusion
It is the conclusion of this court that the issuance of the PEC changed the status of the petitioner to that of an involuntarily committed patient and as such was a deprivation of his liberty. It is the further conclusion of this court that the transfer of the petitioner on the basis of an improperly executed PEC, acted as an involuntary commitment and therefore is a deprivation of liberty accomplished without the due process of law. See Fasulo v. Arafeh, supra; see also section 17a-511 (Transfer of patients committed by court order may occur by agreement between hospitals subject to strict procedures and subject to application for modification of revocation.) Accordingly, it is the decision of this court that the petitioner's application for writ of habeas corpus ought to be and is hereby granted.
Arena, J.