[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by a Complaint dated August 9, 1991. After the plaintiffs filed an Amended Complaint, and the defendants filed Answers and Special Defenses thereto and the parties filed various motions, the matter came before the undersigned for trial. The pertinent pleadings are the plaintiff's Amended Complaint dated October 26, 1993, the defendants' Answer and Special Defenses dated November 17, 1993, and the plaintiff's Reply to the defendants' Special Defenses dated November 17, 1993. The plaintiffs are the Town of Woodbury (Town), Zoning Commission of the Town of Woodbury (Zoning Commission), and Wendy Johnston, the zoning enforcement officer of the Town of Woodbury (Johnston). The defendants are Roderick G. Taylor (Taylor, and the Woodbury Ski and Racquet (WSR). As to the letter, the pleadings do not indicate if it is a corporation, partnership or business name. The pleadings do indicate Mr. Taylor is the President and owner of Woodbury Ski and Racquet.
In their Amended Complaint, the plaintiffs seek a permanent injunction restraining the defendants, their agents, servants and employees from promoting, advertising, operating, or holding a concert at Woodbury Ski and Racquet on August 18, 1991, or on any other date, without receiving a new special permit issued by the Zoning Commission authorizing such a concert. The plaintiffs also seek costs, fees, expenses and attorney's fees incurred by them in connection with this action, as well as any other relief, legal or equitable, that the court, deems appropriate.
On or about August 16, 1991, this court (Gaffney, J.) issued a temporary injunction restraining the defendants from holding a concert on August 18, 1991 or on any other date, in the Town of Woodbury without receiving a new special permit issued by the Zoning Commission for said concert. The matter came before the undersigned for a hearing on the permanent injunction aspect of the matter. CT Page 11285
The property involved in this matter is located on Route 47 in the Town of Woodbury, Connecticut. Kermit Adams testified that he purchased this property in 1962 from Mary A. Thomas. Mr. Adams was an owner and President of Tapawingo Ski Area, Inc., which sold the subject property to the defendant, Woodbury Ski and Racquet, Inc. on December 20, 1972, for $66,000.00 (Exhibit 56). This property was used as a ski area by Tapawingo Ski Area, Inc. and on occasion, was rented out to charitable organizations for various outings. Subsequently, the defendant Taylor purchased two other pieces on Route 47, Woodbury, Connecticut, which he used for parking for the concerts held on the ski area site. These pieces were purchased on December 23, 1980 for $25,000.00 (Exhibit 57), and on June 7, 1988, for $18,000.00 (Exhibit 58).
The Town of Woodbury did not have Zoning Regulations until April 1, 1969. Thus, any activity which took place on the subject property prior to that date would be a valid nonconforming use. Mr. Adams stated that he held one concert on his property in 1970, which drew a crowd of 7,000 people, and for which he needed no permit. Mr. Taylor commenced having concerts on the subject property in 1973. Between 1973 and 1976, Mr. Taylor testified he held eight to twelve concerts each year. In 1976, the Town's Zoning Enforcement Officer, Mr. McDermott, notified Mr. Taylor that he should go to the Zoning Commission and obtain a special permit to hold his concerts. He did this for four of the concerts that year. However, Mr. Taylor stated that the concerts were an incident to skiing and therefore a valid non-conforming use for which he did not need a special permit from the Zoning Commission. He testified he always reserved the right not to have to seek such a special permit and he went before the Zoning Commission only to be a good neighbor and to be cooperative with the Town and the Zoning Commission. In 1980, the original lodge on the property burned down. Mr. Taylor subsequently built a new and larger lodge in a new location on the subject property. At various times, the defendant has used his property for weddings, dances, skate boarding, indoor and outdoor tennis, paddle tennis, volleyball, mountain biking, and bunjy jumping. At the October 8, 1991 meeting of the Zoning Commission (Exhibit 78), the Commission stated that they only recognized the pre-existing right of skiing and the derived right of skate boarding on the WSR property, and that no other inherent right exists for any other "outdoor recreational" activity. CT Page 11286
The defendant's neighbors included a Linda Van Wagonen, who lives in close proximity to the subject property. She and her family have lived there since 1976. Mrs. Van Wagonen stated that she was an alternate member of the Zoning Commission from 1977 to 1980, when she became a full member of said Commission, and which she has remained continuously to this day. She served as the Chairman of the Zoning Commission for two years, commencing in approximately 1984. Mrs. Van Wagonen testified that she recused herself from every matter that came before the Zoning Commission involving the defendants. However, at the Zoning Commission meeting of May 26, 1987, she disqualified herself from hearing the defendants' application for a concert, and subsequently, at that same meeting, filed a complaint about the defendant's previous concert (Exhibit 53).
Anne B. Manning and her husband, Ecton Manning, own twenty-five acres of land adjacent to the defendant's property. Mrs. Manning testified that she and her husband purchased said land in 1968 and built a home thereon in 1972. In 1973, Mr. Mrs. Manning moved from New York to Woodbury and have lived there until recently. Mrs. Manning was an alternate on the Woodbury Planning Commission (Planning Commission) from 1981 until November 1993. During this trial, Mrs. Manning resigned that position due to the fact that she and her husband moved to Greenville, South Carolina.
Robert Travers, who is the present Chairman of the Woodbury Zoning Commission, testified during this trial. He was an alternate on said commission from 1977 to 1981, when he was elected as a full member of said commission. Mr. Travers has been the Chairman of the Zoning Commission since January 1987. During the period of March 1986 to March 1988, Mr. Travers recused himself from all of the defendants' matters that came before the Zoning Commission. He testified he did this because the defendants alleged he had a conflict of interest and requested he disqualify himself from sitting on the Zoning Commission when their matters were being heard by said commission. Mr. Travers is a teacher at the local high school and in approximately 1975 or 1976, he took one of his classes to WSR for a skiing party. He testified that he withheld payment to WSR for that event, as he felt Mr. Taylor did not provide the number of skis and other equipment that he had promised. Mr. Travers withheld payment until there was a meeting a few weeks later between Mr. Travers, Mr. Taylor and the High School CT Page 11287 Principal. After that meeting, payment was made to Mr. Taylor and WSR. Mr. Travers admitted while testifying that he may have stated to other teachers and students at the local high school that Mr. Taylor was a jerk, and may have also stated he was not reliable, not thorough and disorganized. He stated this opinion was formed because of what he had seen of Mr. Taylor when he appeared before the Zoning Commission. Mr. Travers testified that in the spring of 1988, he ceased to recuse himself from the defendants' matters which came before the Zoning Commission. The reasons he gave for this change were that it became apparent to him that the defendants' matters before said Commission were not expedited because he was not a member and that the Commission needed a quorum and with Mrs. Van wagonen [Wagonen] also recusing herself from the defendant's matter, he was afraid there would be a meeting when a quorum could not be obtained to hear the defendant's matter. However, a lack of a quorum at a Zoning Commission meeting never occurred. Further, Mr. Travers testified that Mrs. Campbell, who had chaired the Commission meetings when he recused himself, was elected First Selectwoman, and was no longer a member of said Commission. In addition, Mr. Travers stated Commissioner Moody, who then had to chair the meetings when he recused himself from the defendants' matters, did not want to act as Chairman. For all of the above reasons, plus the fact that he did not feel he had any reason to recuse himself from hearing the defendants' matters as a Zoning Commissioner, he ceased disqualifying himself in March 1988.
Between 1977 and 1988, the defendants always applied to the Zoning Commission for special permits to hold concerts on their property. Mr. Taylor testified that each year, they were always awarded four concert permits, although they applied more than that number. He testified in one of those years, they revoked one of his permits as a result of some problem. Mr. Taylor testified that by 1988, he employed approximately 72 security personnel, 12 to 18 park attendants, up to 8 Connecticut State Police Officers, and a food inspector for each of his concerts. In addition, he had hired a traffic consultant when traffic became a big problem with the Zoning Commission. In addition, he has 8 permanent and 22 portable toilets for these concerts. Mr. Travers testified that in recent years, the concerts have drawn between 500 and 5,000 people. In recent years, each concert permit had conditions attached to it relative to traffic control, sanitary conditions, parking, security and the times the concert could be held, submission of liquor control permits and the release of certain security personnel if the attendance CT Page 11288 was less than expected.
The issue in this case concerns Section 5.2.7 of the Woodbury Zoning Regulations. This section remained the same between 1969 and 1977. As a result of an amendment to that section in 1977, the defendant has filed for a special exception permit for his concerts every year since then. However, the defendant has always claimed that his concerts were an incident use to a valid non-conforming use for skiing. On January 31, 1989, Section 5.2.7 of the Zoning Regulations was amended so that Section 5.2.7 became Section 5.2.7a and section 5.2.7b was added to said regulations (Exhibit 37). Section 5.2.7b reads as follows:
 Uses of an intermittent nature, such as carnivals, circuses, concerts, events, fairs or parades which can be expected to draw substantial numbers of spectators, defined as expected to draw 200 vehicles or draw more vehicles than can be accommodated by available on-site parking, provided that each event, carnival, circus, concert, fair or parade shall be considered a separate use and a Special Exception shall be required for each such use.
These special events had a list of conditions that had to be met which are set out in Sections 5.2.7b i and Section 5.2.7c i (Exhibit B). Mrs. Van Wagonen and Mr. Travers both voted in favor of the aforesaid Amendments.
On December 11, 1990, Section 5.2.7b i of the Zoning Regulations was amended again (Exhibit 22) to define the term "intermittent" as follows:
 Intermittent: The periodic recurrence of a use on the same property, provided such use is held no more frequently than every 28 days up to a maximum of four times in any one calendar year.
This amendment was effective January 5, 1992 (Exhibit 22). This effectively restricted the defendant to four concerts per year with each concert being twenty-eight days apart. As a practical matter, the defendant would be the only person or organization who would be effected by this limitation at this time. The Woodbury Library held four concerts per year in the past, but the number of attendees was less than four hundred, so they CT Page 11289 would not have to apply for a Special Permit for such concerts. Each of these amendments to the Zoning Regulations were approved by the Planning Commission in an advisory capacity.
On November 13, 1990, the Zoning Commission set January 8, 1991 as the date for a public hearing on a proposed amendment to the Zoning Regulation which was submitted by Mr. Taylor (Exhibit 12). On November 20, 1990, the Planning Commission voted to recommend against adopting the defendant's amendment (Exhibit 19). The defendant proposed to amend Section 5.2.7. c. i as follows:
 "Application maybe made under these Regulations for a series of intermittent recreational uses during a calendar year. The Commission may approve a series of such uses if it is satisfied that its regulations are met. After approval of such a series, should any condition of approval not be met in any early event in such series, the Commission may require the applicant to appear and explain why later events in the series should not be modified or cancelled. After notice to the applicant and an opportunity for the applicant to be heard, the Commission may modify the conditions of, or cancel entirely, any later events in the series, provided it finds that the applicant has intentionally and materially violated a condition of the prior events approval with the effect that the public health, safety or welfare was adversely affected. In addition, the Commission may add such additional conditions for future events in the series, including a provision for a bond to insure that similar adverse impacts on the public health, safety and welfare do not occur in later events as a condition of future events in the series. If any previously approved events are cancelled, the last events in the series shall be affected first. Further, if the Commission finds that the applicant has, willfully or intentionally violated any condition of approval, such that the public health, safety and welfare was impacted adversely, it may further impose a fine upon the applicant not to exceed $1,000.00 for each event where conditions of approval were so willfully or intentionally violated."
This proposal was not adopted by the Zoning Commission. CT Page 11290
On February 18, 1991, the defendants applied to the Zoning Commission for four concert dates for 1992. Those dates were May 5, June 2, July 7 and August 4, 1991 (Exhibits C1 to C5). On July 18, 1991, Mr. Taylor wrote to the Zoning Commission requesting that he be allowed to reschedule the concert approved for August 4, 1991, to August 18, 1991 (Exhibit 60). This request was made because there was a problem with the band's schedule relative to August 4, 1991. At the Zoning Commission meeting of July 23, 1991, it was the consensus of the Commission that the date should not be changed without a public hearing process and that there was not ample time for scheduling a public hearing before August 18, 1991 (Exhibit 67). Therefore, this request was effectively denied. The defendants then appealed that denial to the Woodbury Zoning Board of Appeals (Exhibit 65). That Board did not act on the defendants' appeal as they had no jurisdiction over the Zoning Commission's action. It then came to the plaintiffs' attention that the defendants were still advertising a concert for August 18, 1991 for which they had no Special Permit (Exhibit E). On August 7, 1991, the plaintiffs' attorneys notified the defendant's attorney that it would seek an injunction against the planned August 18, 1991 concert unless assurances were given that the concert would not be held (Exhibit F). Subsequently, when those assurances were not forthcoming, the plaintiffs sought and received a temporary injunction prohibiting the defendants from holding a concert on August 18, 1991.
It should be stated here that the plaintiffs' witnesses admitted that the operation of the defendants' concerts had improved over the years and that the defendants, for the most part, complied with the conditions for the concerts as set down by the plaintiffs. However, there were areas of disagreements between the parties. Irrespective of what the witnesses for each party stated, the court got the distinct feeling that these parties only tolerated each other because they had no other choice. Lieutenant Joseph Klewicki, of the Connecticut State Police, who was the Commanding Officer of the Litchfield Barracks, in which jurisdiction Woodbury was located, stated that on June 2, 1991, he went to the defendants' concert to observed events for himself. Also present were six undercover police officers from the Statewide Narcotics Task Force. Lieutenant Klewicki testified he saw a large number of college age persons drink large amounts of beer and a large number of people were intoxicated. He testified there were four arrests CT Page 11291 for narcotics (marijuana) violations on the defendants' property on that day and four arrests for narcotic (marijuana) violations outside of said property on that day. Lieutenant Klewicki estimated that there were approximately three thousand people at this concert. In addition, there were some motor vehicle arrests that day relative to the concert.
The plaintiffs seek a permanent injunction prohibiting the defendants from holding any concerts unless they first obtain a Special Permit from the Woodbury Zoning Commission. The defendants claim that skiing on the property predated the zoning regulations in the Town of Woodbury and that that activity is a valid non-conforming use and that concerts are an incidental activity of skiing and therefore, that activity is also a valid non-conforming use.
Connecticut general Statute 8-12 gives the plaintiffs the right to bring an injunction to prohibit a party from violating zoning regulations. That statute reads as follows:
 If any building or structure . . . . or land has been used in violation of any provision of this chapter or of any bylaw . . . . any official having jurisdiction, in addition to other remedies, may institute art action or proceeding to prevent such unlawful . . . . use or to restrain, corrector abate such violation to prevent . . . . business or use in or about such premises . . . . General Statute 8-12.
From the evidence the court finds that the defendants fully intended to hold an unauthorized concert on August 18, 1991, until the Superior Court issued an injunction against such concert. When a municipality seeks an injunction, it is not necessary for it to prove irreparable harm or the lack of an adequate remedy at law. When it seeks an injunction to enforce compliance with a local zoning ordinance, all that must be shown is a violation of the ordinance. Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 190, 197. Connecticut General Statute 8-12 authorizes an injunction in matters such as these. A municipality, in seeking to enjoin a threatened or existing violation of its zoning regulations, need not show damage accruing to it by reason of the violation. In acting to enforce the regulation, it acts on behalf of the interest of all property owners within the municipality to enforce their right to require conformity with the regulation as the quid pro quo CT Page 11292 for their own submission to the restrictions imposed upon their property. Johnson v. Murzyn, 1 Conn. App. 176, 180. A permanent injunction is one which can be granted only at a final hearing on the merits, and which is usually perpetual in effect. 42 Am Jur 2nd, [Am.Jur.2d], Injunctions #9 (1969). Issuance of an injunction is the exercise of extraordinary power which rests within the sound discretion of the court. City of Hartford v. American Arbitration Ass'n., 174 Conn. 472, 477.
We now turn to the question of zoning and the right of a town to enact zoning regulations. It is axiomatic that local governments are constitutionally authorized to regulate land use. Grace Community Church v. Bethel, 30 Conn. App. 765, 771. The Connecticut Supreme Court has held on many occasions that zoning restrictions, so far as they reasonably promote public health, safety and welfare without depriving landowners of all economically viable use of their property, are constitutional even though the effect of the restrictions may be to limit the exercise of private property rights. Husti v. Zuckerman Property Enterprises, Ltd., 199 Conn. 575, 580. In this matter, the defendants' property is located in a residential neighborhood. It should be noted here that during trial, the court and the attorneys for each party viewed the defendants' properties involved here and the surrounding neighborhood. No evidence was submitted to the court which would indicate that the Town of Woodbury was using zoning to stifle expression that it deemed distasteful. A city has undeniably important interests in protecting the character of its residential neighborhoods and in promoting the health, safety and welfare of its citizens. Ibid, 581. The court finds that the presentation of concert performances staged on the defendants, property which is located in a residential neighborhood would threaten the quality of life and the safety of the inhabitants of the neighborhood by causing noise, attracting large crowds and creating large amounts of traffic on residential rural roads unless controlled by the appropriate municipal agency which in this case is the Woodbury Zoning Commission. In addition, these concerts brought into this neighborhood the propensity for crime, as evidenced by Lieutenant Klewicki's testimony relative to intoxication of young persons and the narcotic arrests. In addition, there was evidence that these concerts brought individuals into this area who trespassed on the neighborhood properties. These are precisely the kinds of dangers that zoning is meant to combat. The court finds that the zoning regulation in question, #5.2.7a, #5.2.7b and #5.2.7b are valid CT Page 11293 regulations.
In the defendants' first special defense, they allege that the holding of outdoor concerts on their property is a valid non-conforming use and therefore, not subject to the Special Permit requirements of the Woodbury Zoning Regulations. The court does not agree. There is no evidence that any outdoor concert was held on the defendants' property prior to April 1, 1969, when the plaintiffs' Zoning Regulations became effective. Further, the defendant at trial claimed that outdoor concerts are a natural extension of the skiing that took place on the subject property that predated zoning. The court does not agree and finds that outdoor concerts are not a natural extension of skiing that took place.
In their second Special Defense, the defendants allege that at various times, Woodbury enacted amendments to their zoning regulations with the expressed intent of limiting the nonconforming business of the defendants. The court does not agree. The court finds that from the evidence, the pertinent amendments to the zoning regulations in 1989 and 1991 had for their purpose a legitimate object, namely the health, safety and welfare of the town residents.
Also, in their second special defense, the defendants allege that the Town of Woodbury had enacted the subject amendments to its Zoning Regulations in order to selectively enforce them against the defendants. The court finds no evidence of this claim. At this time, there may be no other organization or person who would be effected by said amendments. However, this does not make them invalid. As stated hereinbefore, the purposes for which they were enacted were legitimate.
The defendants' third special defense relates to the plaintiffs' claim for attorneys fees. Since the court has not awarded the plaintiffs' attorneys fees, this issue is moot.
The fourth special defense of the defendants alleges that members of the Woodbury Zoning Commission had a conflict of interest when they voted in favor of the amendments to the Zoning Regulations which became effective in 1989 and 1991. The defendants are referring to Commissioners Linda Van Wagonen and Chairman Robert Travers. Essential to the fair and proper operation of zoning agencies is the neutrality and impartiality CT Page 11294 of their members. Fletcher v. Planning Zoning Commission,158 Conn. 497. The decision as to whether a particular interest is sufficient to disqualify, however, is necessarily a factual one and depends upon the circumstances of the particular case. Cioffoletti v. Planning Zoning Commission, 209 Conn. 544. Public office is a trust conferred by public authority for a public purpose . . . . The good faith of the official is of no moment because it is the policy of the law to keep him so far from temptation as to insure the exercise of unselfish public interest. He must not be permitted to place himself in a position in which personal interest may conflict with his public duty. Low v. Madison, 135 Conn. 1, 8. No room must be allowed for suspicion or dubiety. Brunswick v. Inland Wetlands Commission, 29 Conn. App. 634, 639. The test is not whether the personal interest of the commissioner actually conflicted with his public duty, but whether it might have conflicted. Ibid. It is axiomatic that "the appearance of impropriety created by a public official's participation in a matter in which he has a pecuniary or personal interest is alone sufficient to require disqualification." Ibid.
Connecticut General Statutes 8-11 provides in part:
 No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense.
A personal interest has been defined as an interest in either "the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority." Thorne v. Zoning Commission, 178 Conn. 198, 204. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open mindedness and sense of fairness which a zoning official in our state is required to possess . . . Ibid, 205.
In this matter, Chairman Robert Travers had disqualified himself from hearing any matters in which the defendants were involved for a period of two years between March 1986 and March 1988. He then, for reasons previously set forth in this CT Page 11295 memorandum, decided to once again sit as a member of the Zoning Commission when the defendants' matters came before it. Mr. Travers testified that he never felt he had a conflict which should prohibit him from hearing any of the defendants' matters. However, he testified he recused himself because the defendant requested him to do so. However, no evidence was presented to the court which could serve as a basis to show that the basis for Mr. Travers' recusal no longer existed. The court finds that the better course of action would have been for Chairman Robert Travers to continue to recuse himself from hearing any mater involving the defendants or either of them. There is nothing before the court to indicate that any improper influence was exerted by Chairman Travers on his associates, and we impute no such influence to him by the decision in this matter. The evil lies not in influence improperly exercised but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power. Daly v. Town Planning Zoning Commission, 150 Conn. 495, 500. Further, there was no evidence that Chairman Travers ever acted improperly or voted relative to the defendants out of prejudice or bias. As to Commissioner Van Wagonen, the court does not find that she had a conflict of interest. She always disqualified herself from the defendant's matters. The court does not find that either Commissioner Robert Travers or Commissioner Linda Van Wagonen had to disqualify themselves when the Zoning commission considered and approved the 1989 and 1991 amendments to the Woodbury Zoning Regulations. Those amendments affected every resident of Woodbury and not just the defendants. The fact that a Zoning Commission has a conflict with one resident of a town does not cause him or her to have to recuse himself or herself from participating in decisions that affect all the town residents.
In the fifth special defense, the defendants allege that Commissioner Anne B. Manning, of the Woodbury Planning Commission, had a conflict of interests when she voted at the Planning Commission meeting on November 20, 1990 (Exhibit 19a), and when she took part in the discussion at the Commission's January 4, 1989 meeting (Exhibit BB). The Planning Commission at the meeting of November 20, 1990 voted down the defendants' proposal to amend the zoning Regulations. The Planning Commission meeting of January 4, 1989 included a discussion about amending Section 5.2 of the Zoning Regulations. The defendants have not sustained their burden of proof on this CT Page 11296 special defense.
Therefore, the court finds that the 1989 and 1991 amendments to the Woodbury Zoning Regulations are legal and in effect for the reasons stated hereinbefore.
The court further finds that Commissioner Robert Travers should not have participated in any matters involving the defendants which came before the Zoning Commission after March 1988 for the reasons set forth above.
Therefore, the court denies the plaintiffs' request for a permanent injunction in this matter. Since a permanent injunction is denied, the court also denies the plaintiffs' request for attorney's fees under Connecticut General Statute8-12.
The plaintiffs allege in their replies to each of the defendants' special defenses that it is not equitable to deny the relief sought by them since the defendants failed to appeal the actions of the Zoning Commission under General Statute 8-8
when the 1989 and 1991 amendments to the Zoning Regulations were approved. They rely on the case of Upjohn Co. v. Zoning Board of Appeals, 224 Conn. 99, for that proposition. However, in view of the court's findings in this matter, it is unnecessary to decide that issue.
Judgment may enter accordingly.
/s/ William J. Sullivan, J. WILLIAM J. SULLIVAN